22 U.S. 325 (1824)
9 Wheat. 325
ROBERT J. TAYLOR and others, Appellants,
v.
JOHN THOMPSON MASON, Respondent.
Supreme Court of United States.
March 3, 1823.
February 3, 1824.
*332 The cause was fully argued, upon all these points, by Mr. Jones and Mr. Harper for the appellants, and by the Attorney-General and Mr. Emmet, for the respondents.
*339 Mr. Chief Justice MARSHALL delivered the opinion of the Court; and, after stating the case, proceeded as follows:
If the estate should yield any surplus profits, after satisfying the charges placed on it by the testator, J.T.M. is directed to account for those profits, and they are the property of "the person that may have the right," according to the language of the will.
Are the heirs at law the persons "who have the right," according to this language?
Certainly not. The plain intention of the will is to exclude them. They admit this; and support their claim by alleging that the will, so far as respects the devises which are to take place after the death of J.T.M., is utterly void, the limitations over being too remote.
The first limitation is to "the male heirs of my nephew, J.T.M., lawfully begotten, for ever, agreeably to the law of England;" that is, the oldest male heir to take all.
If the clause stopped here, there could be no question in the case. The person who should be the eldest male heir of J.T.M. at the time of his death, would take the estate. But the testator proceeds to prescribe the "terms" on which such *340 eldest male heir should take. They are, "that the name of the one that may have the right, at the age of twenty-one, with his consent, be changed to Abraham Barnes, by an act of public authority of the State, without any name added, together with his taking an oath before he has possession;" "that he will not make any change during his life in this my will, relative to my real property. And on his refusing to comply with the above mentioned terms, to the next male heir, on the above mentioned terms; and so on, to all the male heirs of my nephew, J.T.M., as may be, on the above terms; and all of them refusing to comply in a reasonable time after they have arrived at the age of twenty-one, say not exceeding twelve months, if in that time it can be done, so that no act of intention to defeat my will shall be allowed of; and on their refusing to comply with the terms above mentioned, if any such person may be, then to the son of my late nephew, H.T.M." &c.
The time allowed the eldest male heir of J.T.M. to perform the condition on which his estate would, according to the words of the will, become absolute, is twelve months after he shall attain his age of twenty-one years. As J.T.M. might die, leaving no son alive at his death, but leaving his wife ensient of a son, it is obvious that the contingency on which the estate depended might not happen within a life, or lives, in being, or within twenty-one years and nine months after the death of J.T.M. If, therefore, the estate did not vest until the contingency should happen, the limitation over to the eldest male heir of J.T.M., depends *341 on an event which is too remote to be tolerated by the policy of the law, and the remainder is, consequently, void. If, on the contrary, the estate is to vest on the death of J.T.M., to be devested on the non-performance of the condition, the limitation in remainder is valid, and the plaintiffs are not entitled to the account for which the bill prays.
The inquiry, then, is, whether the conditions annexed to the devise of the remainder, be precedent or subsequent; and this, it is admitted, must be determined by the intention of the testator, which intention is to be searched for in his will.
All the instruments of writing purporting to be his last will, show that his firm and continuing purpose, from the 31st day of October, in the year 1789, to the time of his death, in the year 1804, was to preserve his estate entire for the benefit of a single devisee, and not to permit it to be divided among his heirs. The same papers, likewise, show that the first object of his affection and bounty, was J.T.M.; and the second, was the eldest male heir of J.T.M. An ample and unconditional provision, perhaps equivalent to the whole value of his real estate, is made for J.T.M. during his life; and on his death, the whole real estate, with any residuum of profit which might possibly be accumulated during his life, is given to his eldest male heir. If these devises should be expressed in ambiguous language, this obvious and paramount intention ought to serve as a key to the construction.
The language of the devise in remainder, imports an intention that it should take effect on the *342 determination of the particular estate. So soon as J.T.M., the first object of his bounty, is removed, the eldest male heir of J.T.M., the second object of his bounty, comes into view: "I give the whole of my property" "to the male heirs of my nephew, J.T.M., lawfully begotten, for ever, agreeable to the law of England; that is, the oldest male heir to take all, on the following terms," &c. These words postpone the interest of the devisee no longer than till he can be ascertained; that is, till the death of J.T.M., who was to occupy the premises for his life. The eldest male heir of J.T.M. would be known at his death, at which time the particular estate which was carved out of this general devise, would determine, or at farthest, within nine months afterwards. The language is not such as a man would be apt to use who contemplated any interval between the particular estate and the remainder. The words import the same intention, as if he had said, I give to the eldest male heir of J.T.M. all my property, on condition that, at the age of twenty-one years, his name be changed to that of Abraham Barnes, by an act of public authority of the State, &c. Such words, it seems to the Court, would carry the estate immediately to the devisee, without waiting for the performance of the condition.
With this general intent, manifested in each of these instruments, and this language, showing the expectation that no interest would intervene between the particular estate devised to J.T.M. and that to his eldest male heir, the conditions on which that devise was made, must be expressed *343 in language to show very clearly, that they were to be performed before the estate could vest, to justify the Court in putting that construction on this will.
Let that language be examined. The devise is of the whole property to the male heirs of J.T.M., in succession, the eldest to take first. The condition is to be performed by "the one that may have the right." In the mind of the testator, then, the right was to precede the condition, not be created by it. He would not have described the person who was to perform the condition, as already having "the right," if the impression on his mind had been, that no person would have the right until the condition should be performed.
This expression is entitled to the more influence, from the consideration that the condition is to be performed by the person having the right at the age of twenty-one, or in a convenient time afterwards. The devisee might be an infant at the time of the death of J.T.M. The person who has the right, if an infant, is allowed till he attains his age of twenty-one years, and a reasonable time afterwards, to perform the condition. This is inconsistent with the idea that the condition must be performed before the estate vested, before the right accrued.
The testator then directs, in addition to the change of name, that an oath, prescribed in his will, shall be taken, and then proceeds, "and on his (the person that may have the right) refusing *344 to comply with the above mentioned terms, to the next male heir on the same terms."
The property is, in the first instance, devised to all the male heirs of J.T.M., the oldest to take first. The testator then proceeds to describe the state of things in which the next oldest is to take. That state of things is the refusal of the oldest to comply with the terms annexed to the estate given to him. Upon this refusal, the devise is immediate. No intervention of the heir at law is necessary to defeat the title of the oldest, and to vest the property in the next male heir. But, until this refusal, the rights of the oldest remain unchanged.
Although the words "refusing to comply," may, in general, have the same operation in law as the words "failing to comply" would have; yet, in this case, they are accompanied and explained by other words, which show that the word "refusing" was used in a sense which might leave the estate in the devisee, though his name should not be changed. Where the condition to be performed depends on the will of the devisee, his failure to perform it is equivalent to a refusal. But where the condition does not depend on his will, but on the will of those over whom he can have no control, there is a manifest distinction between "refusing," and "failing" to comply with it. The first is an act of the will, the second may be an act of inevitable necessity.
In this case, the name is to be changed by a legislative act. Now the eldest male heir of J.T.M. may petition for this act, but the Legislature *345 may refuse to pass it. In such a case, the devisee would not "refuse" to comply with the terms on which the estate was given to him; those terms would neither be literally nor substantially violated. If there were nothing in the words of the will to give additional strength to this construction, the refusal of the Legislature to pass the act would not be a refusal of the devisee to comply with the terms, and would seem in reason to dispense with the condition, as effectually as the passage of an act to render the condition illegal. Its performance would be impossible, without any default of the devisee.
But there are other words which show conclusively that the testator intended, by this expression, to make the devise to the next and other devisees to depend entirely on a wilful and voluntary disregard, on the part of the eldest, of the terms on which the property was devised to him.
After giving the estate to the male heirs of J.T.M., in succession, the testator proceeds, "And all of them refusing to comply, in a reasonable time after they have arrived at the age of twenty-one, say not exceeding twelve months, if in that time it can be done, so that no act of intention to defeat my will shall be allowed of, and of their refusing to comply with the terms above mentioned, if any such person may be, then to the son of my late nephew, H.T.M.," &c.
These words expressly refer to all the male heirs of J.T.M., including the oldest, apply to each particular devise, and fully explain the intention of the testator on the subject of the change of *346 name. It is to be changed in twelve months after the devisee attains his age of twenty-one years, "if in that time it can be done;" and this provision is made, that "no act of intention to defeat his will may be allowed of." The devise over is on "refusing" to comply with the terms on which the estate is given in the first instance, and this "refusing to comply," takes place only "if it can be done"  exists only where there is "an act of intention to defeat his will." If it "cannot be done," if there be "no act of intention to defeat his will," then there is not that "refusing to comply with the terms" on which the devise over is to take place.
All these provisions appear to the Court to demonstrate that the testator intended the devise to take effect immediately, to be defeated by the devisee's refusing to comply with the terms on which the property was given.
The devisees are, all of them, the coheirs of the testator, and the whole purpose of the will is to prevent their inheriting any part of his estate as his heirs. J.T.M. takes an interest for life, beneficially, to a considerable extent, perhaps to the whole extent of the profits, certainly to the whole extent, if he chooses to expend the whole, except 1600 dollars per annum, in repairs, buildings, and the support of himself and family; and is to take the surplus profits, if there be any, as trustee: but as trustee for whom? For his eldest male heir, not for the heirs of his testator.
That eldest male heir takes the whole property, including these possible surplus profits, on *347 certain conditions, one of which is, the change of his name by act of Assembly. He might possibly, nay probably, be an infant, for J.T.M. had no male heir at the death of the testator. The event of his being an infant is particularly contemplated, and provided for, in the will. Such infant devisee is allowed twelve months, after attaining his full age, to perform the condition. No provision whatever, if the estate does not vest immediately, is made for his education and maintenance. Not even these surplus profits, which are so carefully to accumulate for his use, are given to him. The infant orphan, heir of an enormous estate, who was the particular favourite, and whose future grandeur constituted the pride of his ancestor, is cast, by this construction, on the world, without the means of subsistence, while the whole profits of his estate pass, without account, to those for whom the testator intended nothing.
The estate is devised, in succession, to each of the heirs of the testator, on the same condition; and, if it be a condition precedent, the consequence is, that the same persons who could not take it in succession, as he wished it to pass, would take it in common, as he wished it not to pass. The whole scheme of the will would be defeated, and an object be effected, which all his ingenuity had been exerted to prevent.
In this view of the case, it may be proper again to observe, that the devise over to the second male heir of J.T.M., is limited to take effect on the refusal of the oldest to perform the terms on which the estate is given to him. This must be a voluntary *348 refusal, an "act of intention to defeat his will." Now, a failure to perform the condition may take place, although the devisee may have used his utmost endeavours to perform it: the Legislature may refuse to pass the act required.
If it be a condition precedent, the estate, in that event, can never vest, and the whole intention of the testator may be defeated, without the fault of the devisee. But the will was framed with very different views. The testator declares, that each devise over is to take effect on the previous devisee's "refusing" to comply with the terms on which the devise was made to him; on his obtaining the act of Assembly, "if it can be done;" on there being no "act of intention to defeat his will." This construction would make the devise to depend on the will of the Legislature, although the testator declares that it shall depend on the devisee himself.
To take the oath not to make any alteration in the will, so far as respects the real property, is completely within the power of the devisee, and this is directed to be taken "before he has possession." This direction shows the opinion of the testator, that the estate vested immediately, otherwise there could be no necessity for the clause suspending the possession. It would be a very useless declaration, to say, that the devisee should not take possession of an estate to which he had no right. This assists, too, in marking more clearly the distinction taken by the testator, between a condition annexed to the estate, which was in the power of the devisee, and one not in his power. The possession *349 is not postponed until he shall obtain an act of the Legislature for the change of his name, but is postponed until he shall take the oath directed by the will.
In the case of Gulliver v. Ashby, (4 Burr. 1929.) William Wykes devised his estate to several persons in succession, after the death of his wife, and added the following clause: "Provided always, and this devise is expressly on this condition, that whenever it shall happen that the said mansion house, and said estates, after my wife's decease, shall descend or come to any of the persons herein before named, [that] the person or persons to whom the same shall, from time to time, descend or come, [that he or they] do or shall then change their surname, and take upon them and their heirs the surname of Wykes only, and not otherwise."
In giving his opinion on this case, Lord Mansfield said, "First, that this is not a condition precedent. It can not be complied with instantly. It is `to take the name for themselves and their heirs.' Now, many acts are to be done in order to oblige the heirs to take it, such as a grant from the King, or an act of Parliament. It is not, therefore, a condition precedent, but, being penned as a condition, it must be a condition subsequent."
All the Judges concurred in the opinion, that it was not a condition precedent. Mr. Justice Yates thought it no more than a recommendation. The other Judges considered it as a condition subsequent.
To the reason given by Lord Mansfield, for *350 considering the conditions on which the testator, in the case in Burrow, devised his estates, as conditions subsequent are superadded, in the case at the bar, others of great weight, which have been mentioned and relied on.
The case put at the bar, that the eldest male heir of J.T.M. might die within twelve months after attaining his age of twenty-one years, leaving an infant son, deserves serious consideration. If the estate vested in the ancestor, it would descend to him. If the condition be precedent, the estate did not vest, and cannot descend to him. This would be contrary to the general spirit of the will.
If the change of name constituted the whole condition of the devise, the proofs furnished by the will of its being a condition subsequent, are so strong as to dispel all reasonable doubt. But there is another condition, respecting which the intention is less obvious.
The person "that may have the right" is to procure an act of Assembly for the change of his name, "together with his taking an oath, before he has possession, before a magistrate," &c. "that he will not make any change during his life in this my will, relative to my real property."
It has been truly said, that this condition is against law, is repugnant to the nature of the estate, and consequently void. But if this be a condition precedent, its being void will not benefit the devisee. It becomes necessary to inquire, therefore, whether this also be a condition subsequent, or must be performed before the estate can vest.
*351 In making the devise, the testator uses the words, "I give the whole of my property." Immediately afterwards, he describes the person who is to perform the conditions on which the property is given, as "the one that may have the right;" and, after directing the change of name, adds, "together with his taking an oath, before he has possession, before a magistrate of St. Mary's county," &c.
The person who "has the right," is to take the oath "before he has possession." Title then is distinguished from possession. The most attentive perusal of the will furnishes no reason for the opinion that the testator has confounded possession with title. All those parts of the will which respect change of name, dispose of the whole property, and dispose of it in such terms as to show, we think, a clear intention that the right should vest in the devisee on the death of J.T.M., to be defeated on the non-performance of the condition annexed to the estate. The change of language, and the adoption of the word "possession," indicate very strongly that the word was used in its popular sense, to denote the taking actual and corporal possession of an estate. The testator was contemplating the event of an infant becoming entitled to his property, and providing for that event. Such infant was, within twelve months after attaining his age of twenty-one years, "if in that time it could be done," to obtain an act of the Legislature for the change of his name; and moreover to take the oath prescribed, "before he has possession;" alluding, we think, clearly, to that possession which an infant devisee takes of *352 his estate, when he attains his majority. A different construction would make this devise repugnant to itself. It would make the devise to depend on two conditions, to be performed at the same time, and yet the one to precede the vesting of the estate, and the other to be capable of being performed more than twenty years after it had vested. The word possession cannot be construed as equivalent to right, for the purpose of producing such consequences as these.
After disposing of his estate in fee tail, the testator proceeds to carve out a particular estate for his favourite nephew, J.T.M.; and it is not entirely unworthy of notice, that he continues the use of the word "possession," with the obvious intent to affix to it the meaning of simple occupancy. It is impossible to read these wills, without perceiving a continuing and uninterrupted desire to bestow his whole estate on J.T.M. and his family. The first will gives him the estate absolutely. His desire to preserve it in mass, and to connect it with his name, increased with his age; and his second will gives his estate to J.T.M. for life, remainder to his eldest son in tail male, remainder to the heirs of J.T.M., the oldest to take all, on condition of their changing their surname to that of Barnes. The last will contains intrinsic evidence that, preserving the same intention with respect to his estate, he had been alarmed by the suggestion that the remainder in tail to the heirs of J.T.M. might coalesce with his life estate, and, vesting in him, might enable him to break the entail and divide the estate. To reconcile *353 his kindness to J.T.M. with his pride, he endeavours to give his nephew the advantages of an estate for life, in such form as to leave him no power over the fee. It is not unworthy of remark, that in endeavouring to accomplish this object, he continues the use of the word "possession." My will is, he says, "that he (J.T.M.) shall keep the whole of my property in his possession during his life, with full power," &c. Whether the legal effect of this clause be the same with an express devise to J.T.M. for life, remainder to his heirs in tail, is unimportant with respect to the present inquiry. It shows the intention of the testator, and the sense in which he used the word. It shows that he distinguished between possession and title.
The Court is of opinion, that were the paper which is supposed to have been executed in 1803 to be considered as constituting singly the will of Richard Barnes, and were it to be admitted, that an estate tail did not vest in J.T.M., still the conditions annexed to the estate devised to his oldest heir male are subsequent, and not precedent; and, consequently, the contingency on which the devise is to take effect is not too remote. This opinion renders it unnecessary to decide the questions, so elaborately discussed at the bar, whether the last will revoked those which preceded it, and whether an estate tail is vested in J.T.M. It would be improper to decide those questions at this time, because persons may be interested in them who are not now before the Court
Decree affirmed.