Opinion of Chief Justice.
Ann Smith, late of the county of Salem, at the making of her -will on the 17th of April, 1818, was the owner of a plantation in the township of Mannington in that county. She had then living a son, John Smith, and a grandson, Israel Smith, the son of her son Hill Smith, who had previously departed this life. Her son John Smith was then the owner of a farm in the township of Elsinborough, and had pecuniary demands against his mother and also against the said Israel Smith, his nephew. Ann' Smith, by her will devised among other things as follows: “ I give and devise unto my son John Smith, all that plantation situate in the said township of Mannington, on which the said John Smith now resides ; and also, twenty-five acres of woodland situate in the said township, adjoining lands of Jodiah Allen and Samuel Allen, during his natural life; and after his death I give and devise the said plantation and tract of woodland to such of the lawful issue of the body of the said John Smith, as shall arrive to the age of twenty-one years, and to the survivor of such isssue; and for the want of such issue, I give and devise the said plantation and tract of woodland in fee to Joshua Smith, Powell Smith, and Mary Smith, wife of Merriman Smith, Esq., and to their heirs forever : Provided that the said John Smith shall convey, by a good and sufficient conveyance in law, unto Israel Smith the son of Hill Smith and my grandson, all the right and title of him the said John Smith, to the real estate of liis father Hill Smith, and which was laid off to the said John Smith in the division of the real estate of his father, by order of the Orphans’ Court of the county of Salem [being the above mentioned farm in Elsinborough,] and pro *292 vided also, that the said John -Smith shall release to my executors hereinafter named, all accounts, charges and actions against me or my executors; and shall also release all actions against the said Israel Smith, above named ; and in case the said John Smith shall refuse to make such con-*246] veyance to the *said Israel Smith, or to execute such releases to my executors, and to the said Israel Smith, then this devise to be void, and in that case I give and devise the said plantation and tract of woodland to the said Israel Smith and to the heirs of his body, and for want of such heirs, to the aforesaid Joshua Smith, Powell Smith and Mary Smith, wife of said Merriman Smith.” The testatrix lived until 22d December, 1825. In the meantime, however, in May, 1820, her son John died, leaving three children, the eldest of whom is yet under the age of twenty-one years. No conveyance was made by John in his life time to Israel, of the Elsinborough plantation; nor was any release of the pecuniary demands executed; but the plantation on the decease of John descended to and is now held by his children; and after his decease, his administrator sued for and recovered those demands from Ann and Israel respectively. The contents of the will were unknown to John and to his children, during the life of the testatrix.
The children of John, who are the lessors of the plaintiff, insist the devise of the Mannington plantation has failed, not only as to John, but also as to Israel; that the plantation has descended therefore, to the heirs of the testatrix; and that in the character of heirs they are now entitled to recover one moiety of it from Israel, who was in possession' at the commencement of this action. If such is the legal result, the intention of the testatrix is certainly frustrated ; for the slightest inspection of the will shews she did not design that John or his children should have payment of the pecuniary demands, and the farm in Elsinborough, and one-half the farm in Mannington ; nor that Israel should be compelled to pay the pecuniary demands against him, and *293 be left with half only of the latter farm and without any portion of the former. On the contrary, her wish was that the pecuniary demands should be extinguished ; that John, and after him, his issue, should have the plantation in Mannington, and Israel, that in Elsinborough; and if this disposition did not take effect, she intended that Israel and the heirs of his body should have the plantation in Mannington.
Our duty then is, to examine whether the intent of the testatrix according to the provisions of the will, and the events which have occurred, can, consistently with the rules of law, be accomplished. Upon looking into the will we find a devise of the premises in question to John, and afterwards to his issue, and also a *deviso [*247 of the same premises to Israel and the heirs of his body. The devise to John was conditional, not absolute. The devise to Israel was to take effect in case the devise to John did not become absolute, or, in the language of the will, became void. The disposition intended in the devise to John, was first, if ever, to take effect; and if it did, and became absolute, the devise over to Israel could never ■come into existence. The devise to John, was conditional. The devise to Israel, however, was not connected with, or dependent upon that condition, except as it served to control the devise to John. The failure of performance of that condition while it would defeat the estate to John and the others connected therewith, that is, to his issue, and for want of such issue, to the three Smiths, would not defeat the estate to Israel. On the contrary, the non-performance of the condition, causing the failure of the devise to John, would give rise to the contingency on which the devise to Israel was to take effect. The condition was not connected with all the clauses of the will, so that a failure of performance should alike operate on and defeat all, but was connected with certain of the clauses, and a failure operating on and defeating them, would clear the way for the existence of the rest. The estate to the issue of John, and for the want of such issue, *294 to the three Smiths; is, like the estáte to John, dependent on the condition. The condition unfulfilled, the devise to the-issue and to the three Smiths must fail as well as the devise to John. Suppose John living, and the correctness of this position is very manifest. His non-performance would defeat the estate to him and those immediately dependent on it, but not the devise to Israel, which indeed such non-performance was to call into action.
Such being the nature of the will, it remains to inquire what effect is produced by the events which have occurred. John Smith, the first named devisee, died in the lifetime of the testatrix. He made no conveyance or release. His children are under age. They can make no conveyance, even if a conveyance by them would be of any avail. The condition of the devise to John, has not been performed and cannot be performed. The devise to him and to his issue fails. And the question is, whether the devise over to Israel also falls or now takes effect ? The intent of the testatrix, under such circumstances, cannot I think be mistaken. Her wish was, that John should have the Mannington farm and *248] *Israel that in Elsinborough, and that the pecuniary' demands should be released; and it is equally clear and certain that she intended that neither the whole nor any part of the Mannington farm, should go to John or his issue, unless the conveyance of the other farm was made and the releases executed, unless the Elsinborough farm became the property of Israel and the pecuniary demands were extinguished ; and that she designed Israel to have the Manning-ton farm in case he did not obtain the other, and a discharge of th,e claims which John had against him.
In order to resolve the question proposed, let us in the first place, examine the nature of the estates created by this devise.
Where words of condition are used in connection with a devise, and there is another or subsequent devise of the same premises on the failure of the first or preceding devise, the *295 words of condition are not strictly considered as such, or rather have not the force and operation of words of condition, and are called words of limitation. The design of this rule is to subserve the intent of the testator. For if they were, under such circumstances, considered words of condition strictly, the intent Avould be liable always to be defeated, if the second devisee was not the heir at lawn By another rule, no person, except the heir at law, can enter for or enforce a breach of a condition. And by another rule, the estate? standing on condition, does not cease on the breach of the condition, but on the entry, or at sometimes the claim, of the heir at law. Hence if the words were deemed words of condition, the second devise might fail if the heir at law did not think proper to enforce the breach of the condition, and 10 enter or claim, and put an end to the estate. The condition might fail or be broken, and yet contrary to the intent of the testator, the subsequent devise, from the omission or refusal to act of the heir at law, might not take effect. Thus if a farm, was devised to A. on condition that in one year he should build an house upon it, the heir at law only could enter for a failure; and the estate of A., though no house were built would continue until he did enter. But if the land were given to B., not being the heir at law, in case the house was not built, the land, on failure to build, would at once vest in B., without any act to be done by the heir at law. In the one case, the words are called words of condition, and in the other, by reason of * their connection, words of [*249 limitation; and the estate, which in the one instance is called an estate upon condition, is in the other called an estate upon conditional limitation.
Thus in a case like the present, if the words annexed to the first devise are deemed words of condition, the second devise would depend not merely on the performance or failure of the condition, but on the will and pleasure of the heir at law, for if he did not think proper to enter, the second devise would not take effect. But as they are *296 deemed words of limitation, the concurrence of the heir at law is not needed, and the estate, on breach or failure of the condition, at once vests in the devisee.
Carrying our view of the present case somewhat farther, we shall distinctly perceive the propriety of the rule which thus, under different circumstances, gives a different construction to even the same words ; and how essential it is to secure, and how effectually it does secure, the intention of the' testatrix. The conclusion is irresistible, as well from the very language as from the structure of the will, that she designed the Mannington farm should go to Israel, in case John did not make the conveyance she wished of the Elsinborough farm. She did not intend he should have the liberty of choice to make or refuse the conveyance, and besides, if heir at law, to have the power to enforce or waive the breach of the condition; first to refuse to convey, and then to refuse to enter for want of conveyance. She intended the devise to Israel should vest on the refusal to convey, not on a subsequent act of John himself, taking advantage of or enforcing against himself the breach of the condition. Yet if these are words of condition only, John may refuse to' convey, and then by refusing to enter, prevent the subsequent devise to Israel from taking effect; which result he can by no means produce, when the words are construed words of limitation; for then on his breach or non-performance of the condition, the estate vests in Israel, and he may enter.
Upon the argument at the bar, it was insisted that this devise cannot contain a conditional limitation, because the condition imposed upon John is in its nature precedent; he must, it was said, convey and release before the estate could vest, and a conditional limitation depends on a condition subsequent; a condition to defeat an estate once vested. I *250] do not find this distinction *recognized in the books; on the. contrary, Burrow reports Lord Mansfield to have said, that the case of Porter v. Fry, 1 Ventr. 202, which will hereafter be more particularly stated, was a condition. *297 precedent, and therefore the estate never vested ; 4 Burr. 1938. And, moreover, the reason on •which the rule for construing words of condition to be words of limitation is founded, seems to apply with equal force to both kinds of condition. Such construction is made to prevent the heir, who alone can act under a strict condition, from defeating the devise over by refusal to enter or claim for breach or non-performance. Now, in both cases, the devise over would be equally defeated, if the heir refused to enter or claim. And hence the rule formed in order to prevent such result in the one instance, ought also to be in force in the other. But it is not necessary to pursue this inquiry or to resolve if; for it will be seen hereafter, in a leading and unshaken case, that words of condition, like the present, have been construed to be words of limitation, and effect has been given to a devise over, though the condition was unperformed, because events rendered it impossible.
It was farther argued on the part of the defendant’s counsel, that the right of choice to make or refuse the conveyance, was intended to be personalty exercised by John ; to bo a personal consideration with him ; in other words, that the disposition to be made of the farms was to depend on his preference and selection; and that as he died in the lifetime of the testatrix, and before he could be called to make the choice, the subsequent devise which was to depend on his refusal, is now impossible, and cannot take effect, and the Mannington farm must therefore descend to the heirs at law. This argument assumes for its basis, a confidence in John, or an intention in his favor, much beyond the language of the will. The testatrix designed to produce a certain disposition of the real estate, which she has mentioned ; the Mannington farm to John, the Elsinborough farm to Israel. Such only was her real aim. This disposition could not indeed be brought about, unless John thought proper to make the conveyance. She could not deprive him of his right to refuse. But she meant to confer upon him *298 no power or authority, to add nothing in this respect. The condition was framed and annexed to the devise, not for the benefit or gratification of John, but simply to produce the disposition which she desired.
*251] *This argument also assumes an undue influence to the phrase, “ in case the said John Smith shall refuse.” The term refuse, as here used, is explained by the context, is no more than a repetition of the condition, and is not designed to restrain or enlarge, or in any wise to alter it, and means only a failure to convey and release. In Taylor v. Mason, 9 Wheat. 344, Chief Justice Marshall says, the words “refusing to comply,” may in general have the same operation in law as the words “ failing to comply;” and he lays down this rule of construction, “ Where the condition to be performed depends on the will of the devisee, his failure to perform is equivalent to a refusal.”
But whatever opinion may be entertained of the design of the testatrix to vest in John a right of choice, it must be conceded that such intent was of a subordinate or secondary character, a particular intent, as it is sometimes denominated. The general or paramount intent was, that Israel should have the Mannington farm if he did not obtain the other, and a. release or extinguishment of the claims against him.
The truth, however, is, and so it will appear in the sequel, that this argument, and the result of it, are of little importance, inasmuch as the effect of this devise, and the determination of the present controversy, do not turn upon the inquiry here raised. We are now brought to the consideration of one of the most important and influential topics in this cause. What is the legal consequence in case of such limitations by will, of the decease of the first devisee, or him by whom the condition was to have been performed, in the life of the testatrix ? Do both devises, first and second, fail ? Or does the first only fail, and the second take effect ? In Holcroft’s case, Moore 486, there was a devise to the use of the first son of Sir John Holcroft in tail, and so to the 2d, *299 3d and 4th sons successively, and if the said fourth son should happen to die without issue, remainder over to Hamlet ITolcroft, and divers limitations over. Sir John Holcroft never had but one son. The question was, whether the subsequent uses could arise ? The court held that they could, for the words amount to no more than a limitation of the estate, and are not a condition precedent to the estate of Hamlet. In Scatterwood v. Edge, 1 Salk. 229, the devise was to trustees for a term of years, then to the first and other sons of A. successively in tail male, provided the said *sons [*252 should take on them the surname of the devisor; and in case they or their heir or heirs should refuse to take his name or die without issue, then to the first son of B. in tail male, provided he took the surname. A. had no son at the time of the devise, and died without issue; B. had a son living, who took the name of the devisor. It was held that the devise to A. was not a condition precedent to the devise to B., which failing, all must fail, but a precedent estate attended with limitations, and that the devise to B. took effect.
In Williams v. Fry, 1 Ventr. 199, Raymond 236, the testator devised an house to his wife for life, and after her death to his grand-daughter, the defendant, and the heirs of her body; Provided always, and upon condition that she married with the consent of certain named persons, and in case she married without such consent, or happened to die without issue, then to his grand-child, the lessor of the plaintiff, and his heirs forever. The grand-daughter married at the age of fourteen years, without such consent, and without notice of the will, until after her marriage. The court held, that though the word condition was used, yet, limiting a remainder over, paade it a limitation, for so it was plain the testator meant; and that notice of the condition or will was not necessary; and judgment was rendered for the plaintiff. In Jones v. Westcomb, Prec. Ch. 316, a testator devised to his wife for life, and after her death to the *300 child of which she was then enciente, and if the child died before it came to the age of twenty-one, then he devised one-third part to his wife, and the other two-thirds to other persons. The wife was not enciente, and so the contingency on which the devise over was to take place, never happened. Yet it was held that the devise over was good. Lord Mansfield speaking of this case in 3 Burr. 1624. says, " the intent, though not expressed, must be construed to give -the estate to the substitute, unless a posthumous child lived to be of age to dispose of it. Consequently, no posthumous child having ever existed, the subsitute was entitled.” In the case now before us, the intent is equally strong to give the Mannington plantation to the substitute, Israel, unless a conveyances and releases were made. Consequently, no conveyance or release being made, the substitute is entitled. Andrew v. Fulham, 2 Str. 1092, 1 Vez. 421, was an ejectment which depended on the same clause *253] *of the will on which arose the case in Chancery of Jones v. Westcomb. The Chief-Justice said the objection was, that no such person ever existed, and, consequently, those who claim in remainder on the dying of such person under 21,.and without issue, can never enjoy the estate. But he said it was no unusual thing for words of condition to be taken as words of limitation, where there was a remainder over ; that it was an executory limitation, which are all on some contingency on the failure of a preceding limitation, and none of them takes in all the ways of failing, yet it was the same thing. The devise over was held good by the court. Gulliver v. Wichett, 1 Wils. 105, was on the same will. The court said, whether the limitation to the child never took effect, or whether it did and was determined, is the same thing; as the remainder to the child never could take place, the next devise over must take effect. In Statham v. Bell, Cooper 40, the testator having a daughter, and supposing his wife enciente, devised, if a son, to him at twenty-one years of age, and if a daughter one moiety to *301 his wife, and the other to his two daughters at twenty-one ; and if both died before that time, both their shares -to his wife and her heirs. The testator died, his wife was not enciente, and the daughter died under age, and without issue. The question was, if the wife should take the whole ? On the part of the plaintiff, it was insisted, that the wife should not take but on the condition expressed in the will, the birth of a second daughter, and the death of both without issue, which condition was not performed, and therefore she could not be entitled. But the court held it was the plain intention of the testator that in case no son should be born, and he should have no daughters who should live to the age of twenty-one years, that the wife should have the whole estate and in the event which had happened, she was so entitled. In the case before us, it seems to be the plain intent of the testator, that if the farm in Elsinborough was not conveyed to Israel, and the pecuniary demands extinguished, he should have the farm in Manning-ton. The cases which thus far have been reviewed, are, from the principles established by them, important in the present enquiry. The case of Avelyn v. Ward, 1 Vez. sen. 420, is more directly in point. It was thus : Serjeant Urling devised his real estate to his brother Goddard Urling, and his heirs, on condition that within three months after his decease, *he should execute and deliver to [*254 his trustee a general release of all demands. But if his brother should neglect to give such release, the said devise to him should be null and void; and in such case he devised the real estate to Richard Ward, his heirs and assigns. Goddard Urling, the first devisee, who was also the heir at law of the testator, died in his life time. The chancellor held that the devise over, and the contingency on which it was given, was to be considered a conditional limitation; that it was to be construed according to the sense and intention of the testator that if in any event the first could not take place, the subsequent should; and that the sub *302 stance of this was the intent of the testator, that if no such release was executed whereby the demand against his estate would exist, the estate should go over. And he held that the land should not descend to the heir at law, but go to the devisee over. This case, in all its leading features, was like the case now before us. In both, the first named devisee was an heir at law. To both devises a condition was annexed, requiring an act to be done by the devisee; in the one, the time within which the act should be done, was expressly limited to three months after the decease of the testator; in the other, although no express time is limited, yet some time after the decease is necessarily allowéd, and the law will require that it should be of reasonable length; and as in both cases, after the decease of the testator, some time is requisite, the principle as to each must be the same. The devise to Goddard Urling was a fee simple ; the devise to John, with the others dependent on it, is equivalent. There was in each a devise over, and in both, the devisee died in the life time of the devisor. In delivering his opinion, the chancellor, Lord Hardwicke, said, he knew no case of a remainder or conditional limitation over of a real estate, whether by way of particular estate, so as to leave a proper remainder, or to defeat an absolute fee before, by a conditional limitation; but if the precedent limitation, by what means soever is out of the case, the subsequent limitation takes place.
The effect in the present instance, of the decease of John Smith, the first devisee, is very clearly shewn in the general rules laid down by Fearne and by Preston, in their elaborate and distinguished works. I have thought it more satisfactory to recur to some of the leading cases, than to content *255] myself with a reference *to these elementary treatises. Fearne says: Where a devise is made after a preceding executory or contingent limitation, or is limited to take effect on a condition annexed to any preceding estate, if that preceding or contingent estate should never arise or take *303 effect, the remainder over will nevertheless take place ; the first estate being considered only as a preceding limitation, and not as a preceding condition to give effect to a subsequent limitation. Fearne Cont. Rem. 399. Preston says: The limitation over will be considered to give an estate to commence in possession as soon as the interest previously limited shall be removed, by either failing of effect or by taking effect, and afterwards determining, as often as the intention calls for this construction, although the contingency which is expressed merely provides for the determination of the interest under the former gift. Prest, on Estates, 87.
Upon the whole, I am of opinion, the devise over to Israel was a good devise, and took effect; and that on this special verdict judgment should be rendered for the defendant.
Opinion of Ford, J.
This is a devise made to John Smith, who was the son of the testatrix, for the term of his natural life, upon condition that he conveys his estate at Elsinborough, to her grandson Israel Smith; and if he does not comply with the condition, the devise to him is to be void. This must necessarily be construed a precedent condition, to be performed on the part of John, before the estate devised can vest in him, otherwise he would hold both estates at the same time, contrary to the intent of the testatrix, who- evidently meant, that he should take one estate in lieu of the other, but not both together. If he conveys the one estate to Israel, the other vests in him by the devise, eo instanti, and he never has both estates; but if the devised estate vests in him first, he will certainly have both, until he makes a conveyance of the other, be the time longer or shorter; whereas it is the plain intent of the will, that he should never have both the estates for any length of time whatever, and therefore it is necessarily a condition precedent, to be performed before any estate can vest in John under this devise. I found this construction *304 on the evident intent of the will, under that great rule so-*256] fully settled in the books, that a condition is to *be construed precedent or subsequent, as the intent of the testator may require. Cruise, tit. 13, ch. 1, sec. 10.
Taking it then to be á condition precedent, we are next to consider whether the-condition is to be restricted to John’s estate, or extend to that of the issue of his body likewise. If this were the devise of an estate of inheritance to John and the issue of his body, the issue would necessarily be affected by the condition, for if no estate vested in the ancestor, there would be none for the issue to inherit from him. But instead of being an estate tail to John, it is a strict estate for his life,, and the issue are not to take as heirs, at his death, but the limitation after his death is made “to such of the lawful issue-of his body as shall arrive at the age of twenty-one years;” that is, to certain persons, not by name, but by description, who shall take the estate after his death, on condition they arrive at the age of twenty-one years, which persons are not-to take the estate by descent, but by purchase. But the condition affects the estate of the issue, clearly, as I apprehend, upon a different ground. If John does not convey to the grandson, the failure draws after it this consequence, that he is not only to lose the estate under the will, but the saméis expressly limited over to the grandson, and the issue of John are as necessarily precluded as if the testatrix had shut them out by express words. If the issue of John could take this estate, they would not only defeat this plain limitation in the will to the grandson, but he would obtain neither of the estates, when it is the most evident intent of the testatrix that if he could not have one he should have-the other. 'It was not to be expected that John would give-up the one estate, which he held in fee simple, for a mere-life estafe in the other, unless she spread before him the-additional motive of benefitt-ing his issue; and therefore if he did not comply, she took the estate away from him and his issue, in the most direct.manner possible, by a limitation *305 of it over to her grandson. The will is so drawn as that the non-performance of the condition should defeat the estate otherwise intended for John’s issue, as well as himself, by carrying the estate over to the grandson by an express limitation in case of failure; and therefore the condition is annexed to and affects the issue, as well as their father.
But John died by the act of God, in the life time of his mother, whereby the performance of the condition on his part became impossible, *and it was argued, in the [*257 first place, that as the act of God works injury to no one, so it ought not to destroy the estate of John’s infant and innocent issue; and secondly, that if a condition become impossible, the non-performance of it is excused in law. But the act of God cannot properly be said to destroy the estate of the innocent issue if they had no estate vested in them, and that they had, is the point first to be made out. If the question is whether the act of God will give them this estate without its being given by the will, the question readily answers itself in the negative, for it is the will that must give the estate if any is to be given. The meaning of the maxim is no more than that, where the will has given an estate, the act of God will not take it away.
Then as to the performance of the condition being excusable in law, by its becoming impossible through the death of John, before his mother, the law is well settled that if an estate already vested in a person, is to cease unless he perform a certain act by a given time, and the act becomes impossible before the time arrives, it excuses the performance; so that the party shall not lose his estate. Such is a condition subsequent, for divesting an estate which the party has in him. But if it be a condition precedent to be performed in order to acquire an estate, the performance whereof becomes impossible by the act of God or otherwise, the party acquires no estate. The words of Co. Lit. 206, a., are these : “ And so it is in case of a feoffment in fee, with a condition subsequent that is impossible, the estate of the *306 feoffee is absolute; but if a condition precedent be impossible no estate or interest shall grow thereon.” Now we have shewn this to be a condition precedent, and the consequence of its not being performed is that neither John nor his issue acquired the estate.
We have thus far considered this a condition in law, in order to ascertain whether it affects the estate of the father only, or of him and his issue also; and likewise to determine whether it be a condition precedent or subsequent, and the consequences either way; which principles remain applicable to the case, although it should not be strictly a condition in law. And such it certainly cannot be. It is a settled rule of law that none but the heir can enter and take advantage for a condition broken. Cruise, tit. 13, ch. 1, see. 17. Now the consequences of holding this to be a condition is, that if *258] *John had survived his mother, and actually refused to convey, he being an heir, must have entered on himself for his own default. Moreover, he would have profited by his own neglect, losing thereby merely an estate for life, but acquiring in lieu of it an estate in fee simple in a moiety of the very lands, which by the intent of the will, he was never to touch, unless he conveyed the other estate to the grandson. It would, therefore, be in utter destruction of the will to construe this into a strict condition. But there is, if possible, a still stronger objection arising out of another inflexible rule of law, that a condition to be good, must defeat the whole estate, so that the heir may enter and avoid them all; and construing this into a condition would be repugnant to the will in two important particulars, for first, it would defeat the whole limitation over to the grandson, and secondly, it would give to John and his heirs a moiety of that very estate in which they were to have nothing, unless he performed the precedent conditions. It is contrary, therefore, to the drift, intent and scope of the whole will, to construe this as a condition, and there is no necessity obliging the court to do so, it being a perfectly well settled rule, *307 that the law will construe it to be a condition or a limitation, as will best subserve the intent of the testator. Thus in Avelyne v. Ward, 1 Vez. 420, Lord Hardwicke said, “ we are bound to make such a construction as to make good the plain intention of the testator.” So Cruise, tit. 16, c. 2, see. 30. “ It has long been settled, that where, in a devise, a condition is annexed to a preceding estate, and upon the breach or non-performance thereof, the estate is devised over to another, the condition shall operate as a limitation,” &c., “ and limitations of this kind are properly called conditional limitations.” This distinction is all important between a condition and a limitation ; under the former of which, the heir would enter for non-performance and defeat the intent of the testator, and every estate in the premises provided for in the will; whereas under the latter, in case of nonperformance, the limitations go successively into execution, and thus the intent of the will is carried into effect. If John had lived and failed to convey the estate at Elsinborough, it would have remained to him and his heirs, and the grandson would have taken this estate by force of the limitation to him, as the testatrix evidently intended. Nothing can be plainer than that this was intended to be a limitation for the benefit *of the grandson, and not a condition for the benefit [*259 of the heir. I am of opinion, therefore, that the lessors of the plaintiff who are the children of John, have no title to the premises in question, and that the verdict and judgment must go for the defendant.
Opinion of Drake, J.
By the will of Ann Smith, the premises in question' are devised to her son, John Smith, “during his natural life;” and after his death, “ to such of his lawful issue as shall arrive at the age of twenty-one years, and to the survivor of such issue;” and “ for the want of such issue,” in fee, to Joshua Smith and others : Provided, first, that the said John Smith should convey to Israel Smith certain lands, *308 (described by. the testatrix); secondly, that John Smith should release to the executors of the testatrix all demands-against her estate; and, thirdly, that he should .release to Israel Smith all actions against him. And in case the said John Smith should refuse to make such conveyances and releases, then “ this devise to be void; and in that case the-said premises are devised to the said Israel Smith and the heirs of his body.
John Smith died in the life time of the testatrix, and the conditions connected with the first set of devises, have not been performed.
' The estates made subject to those conditions, necessary to-be noticed in 'deciding this cause, are,
1st. A life estate, to John Smith.
2d. A fee simple, to such issue of John as should arrive at the age of twenty-one years.
Although there be no words of inheritance, yet this estate-is a fee simple, as well from the intent of the testator, manifest on the face of the will,‘as from the statute of Hew Jersey on this subject, Rev. Laws, p. 60. And as it is not immediately connected with, and made to vest upon the termination of the life estate of John Smith, but can vest only on a future contingency, before which the life estate has in fact terminated, it is not good as a remainder, and is sustainable only as an executory devise. Fearne on remainders, 397,. 8, 2 Croke 590.
This is also the nature of the estate tail to Israel, it being, limited to take effect after a fee simple.
The tenant in possession holds under Israel Smith. The *260] lessors *of the plaintiff are children of John Smith, both now under the age of twenty-one years.
The lessors seek to recover as heirs at law. And they insist, in the first place, that if the conditions annexed to-the first set of estates, are conditions precedent, then these conditions not having been performed, and-now, since the death of John Smith, not possible to be-performed, all the- *309 •estates devised are gone, and they are entitled to the premises as heirs at law. Or, in the second place, if the conditions be subsequent, then, performance having been rendered ■impossible, by the act of God, the estates dependent upon those conditions are freed from them, and have become absolute. And, although the executory devise to the issue of John is good, yet until some of such issue shall arrive to the age of twenty-one years, the land must descend to the heirs at law, and is now accordingly vested in themselves.
As to the first proposition, that is, that if these be conditions precedent, and now, by the act of God, impossible to be performed, so that the conditional estates cannot vest, the heirs shall have the property; I think it erroneous. 'This would be the effect of a strict condition at the common law, because none but the heir could take advantage of the breach. But in case of a further limitation of the estate, upon breach of the condition, this construction would so evidently oppose the design of the grantor, that the courts have long been in the habit of construing such, as conditional limitations ; and if ever the intent of a devisor could operate to give that construction to a devise, it should ■in this case. Here, estates are given to the heir at law, .and his issue, (now heirs at law) upon condition that they confer an important benefit upon another object of the testator’s bounty, her grandson, Israel Smith; and if they do not, then the estate to go to that grandson. But if the breach of the condition would defeat all the subsequent ■estates created by the will, in the same lands, John Smith and his children, would be more benefitted by breaking than performing the condition, and the intent of the testatrix would be frustrated. But the contrary principle is •now too firmly settled to admit of dispute. It is laid down •in Comyns Digest, title Condition T. “ If a man by will ■devises land to his heir, upon condition that he pays, or does such an act, &o., and for non-payment, &c., devises it •over; this shall be taken as a limitation, though there are *310 *261] express *words of condition ; for otherwise, the heir, who ought to enter for the condition broken, will take advantage of his own default," and see 1st Vezey, 421; 14th Vezey, Jr., 345; 3d Burrows, 1624; 1st Wilson, 107, and 1st Vernon, 234, 304. Most of these cases, with others, are quoted in Cruise’s Digest, title Devise, ch. 20, sections 10 to 22 inclusive. The consequence is, that if these be conditions precedent, an estate tail has vested in Israel, and the lessors of the plaintiff cannot recover. But as to the second proposition, that if these be conditions subsequent, and the performance has become impossible by the act of God, the estate shall be enjoyed discharged from the conditions; and although the vesting of the estate devised to the issue of John Smith must be postponed until-some of them arrive to the age of twenty-one, yet it remains with the heirs at law during the interval, and the plaintiffs, as heirs, are entitled to recover.
That this is the general rule with respect to conditions subsequent, there can be no doubt. And yet it strikes me that it cannot avail the lessors of the plaintiff in this case. John Smith died in the life time of the testatrix, so that no estate was vested in him. By his death, the devise to him became lapsed, and if the estate of his .issue had been so connected with his, that they must have taken through him, and not as purchasers, their estate would also have lapsed by his death, 1st Vezey, 420. But it is said that John’s children take as purchasers. This is true. But when do they take ? Hot yet. They are not yet 21 years of age. It is not pretended that any estate under this devise is executed in them. And where is it ? It is with the heirs at law. And shall they be divested of an estate, yet in their hands, upon a conditional grant of it, when the condition cannot be performed ? I have discovered no case that authorizes this idea. Lord Coke says, that “ if a condition annexed to lands be possible at the making of the condition, and become impossible by the act of God, yet the estate of *311 the feoffee shall not be avoided.” And the reason he gives is, “ because the estate in the land is executed and settled in the feoffee, and cannot be redeemed back again but by matter subsequent.” Here then is the reason of the distinction in this respect, between conditions precedent and subsequent; and upon this reason the rule does not apply to matters executory, as a bond, recognizance, &c. Coke on Lyttleton, p. 206, see. 334; Bacon’s Abdt. title Condition, letter N.
*Need we then enquire whether, if John had sur- [*262 vived, the conditions would have been precedent or subsequent to the vesting of his estate. If not to be performed before his estate would vest, they certainly were to be performed before this devise to his issue could take effect, even in interest. In the case of Doe ex dem. Planner & Wife v. Scudamore, 2 Bos. & Pul. 297, Justice Heath says “ The question always is, whether the thing is to happen before or after, the estate is to vest; if before, the condition is precedent; if after, it is subsequent.” If the conditions need not be performed before John’s life estate could vest, they surely must be before it should end. This devise to the issue of John, then, is in fact subject to conditions necessarily precedent to it in point of time, and it must also be so considered in reference to the reasons upon which the distinction is founded between conditions precedent and subsequent, as affected by the circumstance of performance becoming impossible by the act of God. The result is, that if there were no further limitation, the property would remain with the heirs at law. But it was not the intention of the testatrix that this property should descend to her heirs at law. She has provided a substitute in case the first set of estates should not take effect. And, for the reason before mentioned, I am of opinion that the devise to Israel has taken effect; and, of course, that the lessors of the plaintiff cannot recover.
Judgment for defendants.