In the Matter of the Application of CHARLES W. KEMPF to Compel Dr. RAYMOND A. KEMPF, as Executor, etc., of JOSEPH C. KEMPF, Deceased, to Pay a Legacy under the Said Will.

RAYMOND A. KEMPF, as Surviving Executor, etc., of JOSEPH C. KEMPF, Deceased, and MABEL KEMPF OWENS, Appellants, Respondents; CHARLES W. KEMPF, Petitioner, Respondent, Appellant.

Fourth Department, June 30, 1937.

Leo O. Coupe and Henry F. Coupe, for the executor and Mabel Kempf Owens, appellants, respondents.

Arthur J. Foley [Ira M. Ball, of counsel] for the petitioner, respondent, appellant.

LEWIS, J. This proceeding to compel the payment of a legacy involves a bequest burdened with the condition that the beneficiary " shall be brought up and educated in the faith of and according to the Roman Catholic Religion."

We are to consider cross-appeals. The beneficiary, as petitioner, appeals on the facts from that portion of a surrogate's decree which determines that, according to the weight of evidence, the condition which the testator annexed to the bequest has not been fulfilled. The executor and a single legatee appeal upon the law from that portion of the decree which rules that the condition is void and unenforcible and accordingly that petitioner is entitled to the legacy unconditionally.

The petitioner, Charles W. Kempf, is the son of Charles S. Kempf, who died June 17, 1917, survived by his widow and two children Mary Rose Kempf, who was then thirteen years of age, and the petitioner, who was then aged five. Four years later, on September 18, 1921, the petitioner's paternal grandfather, Joseph C. Kempf, died leaving a will which contained the following provisions with which we are now concerned:

" Third. I give, devise and bequeath unto my beloved grand children Mary R. Kempf and Charles W. Kempf, the children of my beloved son Charles S. Kempf, now deceased, the sum of Five thousand ($5,000.00) dollars each to be paid to them when they arrive at 21 years of age respectively, but this legacy is made upon condition that said children shall be brought up and educated in the faith of and according to the Roman Catholic Religion, otherwise this paragraph of this my last will and testament shall cease and be void and of no effect. * * *

" And the moneys so given to my beloved grand children, the children of my deceased son, Charles S. Kempf, to hold and invest the same and to collect the interest, income and profits thereof, and to use the same at their discretion for their support, maintenance and education, if necessary. Upon condition however that the conditions hereinbefore provided with reference to their religious training shall be faithfully observed and performed."

No question is raised as to the bequest to petitioner's sister, Mary Rose Kempf. She was apparently a devoted adherent to the Roman Catholic church and having thus met the condition prescribed by the testator, her legacy was paid in full when she became twenty-one years of age. When the petitioner attained that age, however, his demand upon the estate of his grandfather for payment of his legacy was refused. Then followed this proceeding involving, among other inquiries, the issue of fact whether the condition annexed to the bequest had been fulfilled.

Upon that issue it appears that prior to her marriage the petitioner's mother was a Protestant. She later joined her husband as a communicant in the Roman Catholic church and adhered to that faith until several years after his death. Meantime the petitioner had been given infant baptism in the Catholic church and, when his age permitted, his mother arranged for his attendance at a Catholic Sunday school. At the age of seven he became a member of a group to receive instruction in preparation for first confession and first communion. He was unable to be present at those rites, however, because at the time he was ill and in quarantine. Thereafter for two years he attended a Catholic Sunday school and was in regular attendance at mass. However, it is to be noted that he did not make his first confession nor did he receive first communion. The next three years, during a temporary absence of his mother, the petitioner made his home with his maternal grandmother whom he regularly accompanied to a Christian Science church where he attended its Sunday school. Then came a succession of years when he was away from home at preparatory school and college during which time he attended mass at various Roman Catholic churches with reasonable regularity. But during all these years and in fact until the trial of this proceeding, the petitioner concedes that he never made confession nor received communion in a Roman Catholic church.

We regard this concession as of controlling importance upon the question of fact at issue in this proceeding. It becomes so by reason of the undisputed testimony given by a Roman Catholic priest that the church requires, as a prerequisite to becoming a communicant, that one shall receive first communion, otherwise

known as the sacrament of the holy eucharist and, in preparation therefor, shall make first confession — known as the sacrament of penance. It is also required, according to the commandments of the church, that after first communion a communicant shall make confession and shall receive the holy eucharist at least once each year during the season of Easter. Having consistently failed to conform with these fundamental and essential requirements of the church which are deeply rooted in its traditions and teachings, it cannot be said, within the intent of the condition annexed to his legacy, that the petitioner has been " brought up and educated in the faith of and according to the Roman Catholic Religion."

It is suggested in support of the petitioner's appeal that, even though he may have been lax in the performance of certain prescribed observances of the church, the fault was upon his godparents and others who were responsible for his religious training. That argument loses force when considered in the light of his admission that at an early age he was taught and has since known that the church required of him that he make his first confession and thereafter that he receive first communion. Likewise, he admits knowledge of the commandments of the church requiring of its communicants that they make confession and receive communion at least once a year during the Easter season. Having known since his instruction at the age of seven that attendance upon these observances and sacraments was required by the laws of the church, we believe his knowledge of such requirements, unaided by the admonition of others, was sufficient to impress upon him the duty of obedience to their demands — provided, of course, he desired adherence to the Roman Catholic church.

Passing from questions of fact we do not agree with that part of the decree which determines as a matter of law that the condition itself is void and unenforcible.

We find in the condition an expression of the testator's desire that his two grandchildren named as beneficiaries should be adherents to the Roman Catholic church. His testamentary intent, as we interpret it, was to condition their legacies upon their being such adherents. The testator's intent in that regard finds expression in his language, " upon condition that said children shall be brought up * * * in the faith of and according to the Roman Catholic Religion." To be " brought up in " and " according to " a religious faith can mean nothing less than conformance with its precepts.

Having thus reached the conclusion that the petitioner has failed to fulfill the condition annexed to his bequest, we shall con-

sider the question of the validity of the condition as a matter of law. In doing so we apply the rule that "Where, upon inspection of the will and upon a consideration of relevant facts and circumstances, an intent is apparent, all rules to the contrary must yield; *provided that intent does not offend against public policy, or some positive rule of law.*" (Italics interpolated.) (*Robinson* v. *Martin*, 200 N. Y. 159, 164.)

It is said that the condition violates those provisions of the Federal Constitution (1st Amendt.) and the State Constitution (Art. 1, § 3) which guarantee religious freedom. With this argument we do not agree. The purpose of the constitutional provisions which petitioner invokes was to protect *all* denominations by prohibiting the establishment under State sanction of any single form of religion which would deprive non-adherents to a church thus established of the right to worship according to the dictates of their own conscience. These constitutional guaranties of religious freedom are limitations upon the power of government, not upon the right of an individual to make such testamentary disposition of his property as he may desire, provided always that positive law or public policy is not contravened. We find nothing in the condition here in question which deprives the petitioner of freedom of conscience as to his religion; nor is it against public policy. Such an inducement by the testator — if it be so considered — to further the interests of his chosen religion and to perpetuate it within the circle of his family, can hardly be said to be a denial of religious freedom to those affected thereby. True it is that terms were annexed to the bequest which some might have found onerous but they could have been declined from motives of conscience or for any other reason. If the petitioner could not in conscience accept the faith of his grandfather — knowing its demands — he could have renounced the legacy thus conditioned. Having chosen to make the petitioner an object of his bounty, the testator had the right to burden his gift with conditions. If those conditions are legal the petitioner cannot disregard the burden and successfully demand the bounty.

Moreover, the condition does not involve the doing of an illegal act. The right to worship according to the tenets of the Roman Catholic church, or any other faith, is the subject of constitutional guaranty in State and Nation. The condition does not restrain religious worship generally. It is not unlike testamentary conditions relating to marriage. A condition which in terms is in general restraint of marriage is void (*Robinson* v. *Martin*, 200 N. Y. 159; *Matter of Weil*, 124 Misc. 692), but conditions forbidding the marriage of a beneficiary to a certain person or to a non-member

of a certain faith are valid. (*Matter of Seaman*, 218 N. Y. 77; *Matter of Salomon*, 156 Misc. 445. Cf. *Hogan* v. *Curtin*, 88 N. Y. 163; 7 Heaton's Surrogates' Courts [5th ed. Eager's N. Y. Law of Wills], § 491, p. 362.)

The view we hold upon this branch of the proceeding is expressed in 2 Alexander, Commentaries on Wills (§ 1052, p. 1510): " It is neither against public policy nor contrary to law for a testator to dispose of his property on condition that religious observances be complied with. The beneficiary may accept the gift or reject it, but he can not complain that there is any interference with his right to worship according to the dictates of his conscience." (Cf. Heaton's Surrogates' Courts, *supra*, § 488, p. 361; Rood on Wills, § 629, p. 422; 2 David's N. Y. Law of Wills, § 885, pp. 1428, 1429.)

We also conclude that the condition under consideration is precedent in character — not subsequent. As such it calls for the performance of the condition before the estate can vest. " There are no technical words which indicate the difference between conditions precedent and subsequent, and the question is always one of intention." (*Booth* v. *Baptist Church*, 126 N. Y. 215, 242.) Gathering the testator's intention from the will as a whole we find it to have been his purpose that the vesting of petitioner's bequest should await the action upon which it was conditioned. After providing that the bequest is to be paid when the petitioner is twenty-one years of age, the testator does not close the sentence at that point but continues it with the phrase — "*but* this legacy is made *upon condition*." There is also significance in the fact that the bequest is described in a single sentence which is heavily laden and closely packed with directions given in the following sequence: (1) The gift to named donees who are carefully described; (2) the sum bequeathed; (3) the time of payment; (4) the condition. Then follows the clause with which the sentence is closed: " otherwise this paragraph of this my last will and testament shall cease and be void and of no effect." We read in this language the testator's intent to create a condition precedent to the vesting of the legacy. In support of our conclusion in this regard we point to rulings upon like facts: *Caw* v. *Robertson* (5 N. Y. 125, 134); *Kenyon* v. *See* (94 id. 563, 567); *Booth* v. *Baptist Church* (*supra*, pp. 242, 243); *Burns* v. *Clark* (37 Barb. 496); *Hull* v. *Palmer* (155 App. Div. 636, 644). (Cf. 2 Alexander, Commentaries on Wills, § 1034, pp. 1490, 1491; 2 Schouler on Wills, etc. [6th ed.], § 1326, pp. 1464-1466.)

Finally it is said that the condition imposed upon the petitioner's bequest created a duty to be performed by some third party —

his mother, his godparents or someone having charge of his religious training — and that he should not now suffer a forfeiture of the legacy because of their default. In support of that position the petitioner cites the rule in *Taylor* v. *Mason* (9 Wheat. 325) where the condition of a devise was that the devisee should change his name by means of an act of the Legislature. The distinction between that case and the one before us is clear. There the condition depended upon favorable action by the Legislature — action which was entirely beyond the devisee's control. Accordingly he might have forfeited his right to the gift through no fault of his own. The doctrine of the *Taylor* case (*supra*) — that non-performance of a condition by a third party does not work a forfeiture of a legacy — is wakened into action only when the beneficiary had no control over the fulfillment of the condition and is himself free of any act or neglect which operates to thwart the testator's desire. There the devisee had no control over the fulfillment of the condition and was without fault; here the failure by petitioner to fulfill the condition annexed to his bequest is attributable to him as well as to his mother or any other third party. Upon the evidence of record before us it does not become the petitioner to claim at this time, when he is more than twenty-one years of age, that ever since the age of seven — when he received instructions which informed him of the sacraments and essential observances of the Roman Catholic church — his sole dependence for religious training was upon his mother or some other third person.

By reason of the conclusion we have reached we may disregard other points raised by each appellant.

That part of the decree which adjudges that the executor has established by a fair preponderance of evidence that the condition annexed by the testator to petitioner's legacy, viz., that petitioner be brought up and educated in the faith of and according to the Roman Catholic religion, was not fulfilled, and that the petitioner did not receive the education and training of the Roman Catholic faith that was contemplated by the testator, is affirmed; that part of the decree which adjudges that the condition is void and not enforcible as against the petitioner as a matter of law and that petitioner is entitled to the payment of his legacy of $5,000, with interest from November 23, 1922, with costs in the amount of $270, disbursements of $18.50 and an additional allowance of $500, is reversed on the law and the petition herein is dismissed, with costs.

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and TAYLOR, JJ.

Decree so far as appealed from on the facts by the petitioner affirmed and appeal from part of the decree on the law by the petitioner dismissed as academic in view of the decision otherwise made and decree so far as appealed from by the executor and Mabel K. Owens reversed on the law with costs to the executor and Mabel K. Owens, payable out of the estate.