The opinion of the court was delivéred by
DtrNCAN, J.
A question is not made, whether the proof met the allegation of the plaintiff. The declaration states, that the bills were to be delivered to Orlando; the evidence was, that they were to be delivered to D. Alanson. I doubt very much whether the plaintiff could recover on that evidence. Giving, however, no opinion on this, but confining myself to the errors assigned,- I pro-’ ceed to inquire whether the testimony of Duna S. Upson and of Abisha Jenkins, the letter from Tompkins to Upson, and the proof of the conversation between D. Alanson and Tompkins, on his return to Athens, ought to have been received, and whether there was error in rejecting the examination of Tompkins, who was offered as a witness to prove the alleged robbery.
The plaintiff did not allege, that Tompkins purloined, embezzled, or converted the money to his own use. He admits that he lost the bank bills by carelessness, negligence, and mismanagement, and it is for negligence in the performance of this voluntary undertaking that the action is brought, and all the evidence must be considered with relation to that charge. Tompkins is charged as the bailee of Saltmarsh, on an undertaking to perform a gratuitous act, from which he was to receive no benefit, and the benefit was solely to accrue to the bailor; in which case the bailee is only liable for gross negligence, dolo proximus, a practice equal to a fraud. It is that omission of care which even the most inattentive and thoughtless men never fail to take of their own concerns. There is this marked difference, in eases where ordinary dili *280 gence is required, and where a party is only accountable for gross neglect. Ordinary neglect, is the want of that diligence which the generality of mankind use in their own concerns, and that diligence is necessarily required where the contract is reciprocally beneficial. The bailee is not bound to ordinary diligence, is not responsible for the omission of that care which every attentive and diligent person takes of his own goods, but only for the omission of that care which the most inattentive take. One who was bound to use ordinary diligence,and suffered the goods to be taken by stealth out of his custody, was held by Sir William Jones, not to have used ordinary diligence; but a contrary practice now prevails. But Tompkins was not bound to use ordinary diligence; he was not bound to lay aside all other business to take the direct road from Georgetown to Athens; he is only answerable for gross neglect; and, though the question is something .new, and not without its difficulties, my opinion is, that it was competent for Tompkins to show, that immediately on the receipt of the letter, he proceeded to Philadelphia, to New York, and to Athens, and to show how he conducted himself, what care he took of his own property, that his care was the usual and ordinary care.
Evidence is constantly accommodating itself to the state of society and the concerns of the world, and therefore must accommodate itself to the altered mode of travelling by stage coaches and steam boats, instead of on horse back or in private carriages. Tra-vellers are constantly more exposed to secret stealth in a crowded stage, or in a steam boat crowded with passengers, where the tra-veller cannot keep his eye on his own baggage. Inns in our large cities are generally filled with strangers, and, with the utmost circumspection, he is certainly more exposed to these risks. To preclude a gratuitous bailee from showing how he conducted himself, and what care he took of his own property, would be shutting out all defence. The evidence offered was of a time directly after the receipt of the letter. I am of opinion, likewise, that evidence ought to have been received of the hue and cry immediately after the discovery; his assiduous and indefatigable pursuit, and strict search, both .at the inn and the steam boat. If he had made no complaint, or no inquiry, remained with his arms folded and his mouth shut, this would have afforded strong evidence of his delinquency; and though it has been said this would have been the course of a guilty man, yet it was one which an innocent man would naturally take, and which, if he did not take, all would condemn him. Nothing would more strongly prove his neglect than this silence, this indifference, — the jury would have drawn the most unfavourable conclusions from it. The next best evidence to proof of a thing itself, is proof of those circumstances which naturally would attend it. These were, the production of the cut valise, the immediate promulgation of the theft, and pursuit of the property. It has been said, this is the party making evidence for *281 himself. It is not, — but evidence of circumstances immediately preceding, and directly following the stealth. The direct proof would be difficult, and is not to be looked for. The circumstances that would naturally attend the whole transaction of a man placed in the situation in which the defendant stood, in such case, from necessity, is proper evidence. It is a presumption which the jury ought to weigh with candour, but with circumspection. It is more or less strong, as the conduct of the party might appear to be natural, and consistent with his innocence, or otherwise, and a mere sham. Even in criminal proceedings, the declarations of prisoners have been received to explain their conduct, as, in an indictment for larceny, that be took the goods claiming the property. The jury hear the evidence, and then judge whether these declarations were genuine claims of property, though mistaken, or made to colour a stealing. 1 Hale, Pl. Cr. 509. 1 Shower, 502. 2 Barn. 174. In trials for murder, declarations of the prisoner antecedent to the fact, are admissible to reconcile or explain his conduct. 2 Harr. & M‘Hen. 120. And, in the hottest times, in trials for high treason, the declarations of a prisonér have been admitted in evidence to explain his acts.
Had Tompkins been indicted for purloining this money, surely this conduct could be received in his exculpation; for no man would be the bearer of a letter with money, at the risk of reputation and property, if he were obliged to prove that his trunk was broken open, or his valise cut open, by witnesses who saw the act done. It would be unreasonable to look for such evidence. It could only be made out by circumstances, whether or not the bailee was guilty of gross neglect. All this is, however, to be understood of acts immediately preceding and directly following, — concurrent acts and declarations, not acts and declarations not known or commenced until after a lapse o.f time, and suspicion afloat. That nothing that a man does or says can be given in evidence to support his own cause, is a good general rule. It has, like other general rules and positions, exceptions; if it had not, it would be better to have no general rule.
The rules of evidence are founded on general interest and convenience, and must from time to time admit of modifications. To, adapt them to the actual condition of thp business of men, they must conform themselves to the exigencies of society. 9 Wheat. 332. And it is for this .reason, shop books which are the books of a plaintiff, are admitted in evidence.
The deposition of Upson, with the letter annexed, except that part of if which is contained within double brackets, oiight to have been admitted, and likewise the deposition of Misha Jenkins, ,to show the concomitant acts and declarations of Tompkins, immediately before and after the. loss; for the declaration admits the bills were lost, and it is proved that Saltmarsh said they were. lost. As all was before any claim made by Saltmarsh, it was evidence *282 of the whole res gesta, the entire conduct, immediate declaration, and hot pursuit of the defendant It was evidence, of his baggage being secured in the usual way at a respectable inn’, and of the manner in which the baggage of passengers was stowed away in the steam boat. It was for the jury to say, whether these declarations and searches were colourable, and not honestly made; whether all this anxiety was affected and not real, to cover a fraud; for if that was the case, this would prove something more than gross negligence. They prove, if not an actual larceny, an act of baseness exceeding in moral turpitude the picking of Saltmarsh’s pocket, — charges never made against the plaintiff in error. In this point of view, the evidence was admissible; but no member-of this court ever doubted 'of the propriety of the rejection of the defendant on record as a witness. He stood as any other defendant stands, and he must make out his defence by disinterested witnesses. He could not be permitted to prove that the loss was not by his neglect, carelessness, and mismanagement. It is not like any of the cases cited by the counsel of the plaintiff in error. A party may be a witness to prove the loss of a written instrument, having first proved its existence and contents. I think the questions put to D. dilanson, on his cross-examination, should have been received, who swore that he never received the money, and that he had some conversation with Tompkins about it on his return. He was the person to whom the package was directed. He said he had some conversation with him. The circumstances in which he stood, with respect to this money; his stating'there was a conversation, entitled the defendant to have the whole of it. For the same reason, 'Bockius, who was present, ought to have been permitted to prove the conversation. It was held immediately on his return, and is to bo considered as part of the whole transaction. It is-to be observed, that-the plaintiff below gave.no evidence of any act of negligence by Tompkins; barely the delivery of the package. Í know not how even a careful and attentive man could escape, if evidence such as the plaintiff gave,.of the bare delivery of the package, was to charge him with the amount admitted to be lost.; if he, without benefit or reward, .having undertaken to do a favour for his friend, could not be discharged for the casualty, without direct evidence how it arose, by some eye witness. No prudent man ever would carry a letter on these terms. There is in all these cases, I admit, a difficulty, — suspicion will attach, — the most upright man will feel mortification; but it is inconsistent with the state in which the law has placed the voluntary depositary, who acts for the benefit of another, to cast upon him the burden of showing exactly, by witnesses, the quo modo he lost it, when the bailor admits that somehow he did lose it. The facts and circumstances are all for the consideration of the jury. To keep them from them is excluding the only light-which can be shed on the conduct of the party charged with negligence alo.ne.
Judgment reversed, and a venire facias de novo awarded.