KNOWLES *versus* ATLANTIC AND ST. LAWRENCE RAILROAD COMPANY.

A bailee without reward is answerable only for *gross negligence.*

But where the bailor knows the habits of the bailee and the place and the manner in which the goods are to be kept, the law presumes his assent that his goods shall be thus treated, and if lost or damaged, he can maintain no action therefor.

ON REPORT from *Nisi Prius,* RICE, J., presiding.

This action was to recover for the loss of sixteen tons of hay.

It was stipulated that the Court might draw the same inferences from the evidence and admissions as a jury; and

if the defendants are liable in *any form* of declaring, they are to be defaulted; otherwise a nonsuit to be entered.

On July 15, 1851, the plaintiff hired two cars of the A. & K. Railroad Co. at $15 for each car, in which they were to transport his hay from Belgrade to Portland. The last part of the way was over defendants' road, and there was an arrangement between them and the A. & K. R. R., which authorized such a trade.

The plaintiff designed to ship the hay from Portland to Boston, and on the 16th of July it was transported to Portland, and the plaintiff was there and procured one Hamlen to arrange for its shipment to Boston. The cars were then standing on the freight track of the A. & K. Railroad at Portland, loaded with the hay; the plaintiff was notified by defendants that their risk had terminated; that there was the hay in good order, and that then it must be at his risk against any damage.

The track down on defendants' wharf and the one where the cars then stood were the only tracks from which freight could be shipped.

Plaintiff desired that the hay might remain on the cars until shipped, and asked if there was any place he could put it that would be out of their way, where it could remain a day or two. He was told that if it was going by a vessel, it would be best to put it on the wharf, for it would there be out of their way and convenient to ship.

It was in evidence that plaintiff assented that the hay should remain on the cars, and at his risk, till taken away.

The cars were run upon the wharf spoken of, but by whose order did not appear. The next morning the wharf fell and most of the hay was lost.

The wharf gave way from being overloaded with railroad iron which had been deposited there for about two months.

*Paine*, for defendants.

1. Defendants are not liable as common carriers, because their duty as such terminated two days before the loss. Story on Bailments, 541; 10 Met. 472; 11 Met. 509.

2. After the delivery of the hay at Portland, the defendants became the gratuitous bailees of the hay and responsible only for gross negligence. No such negligence appears. No prudent man would have hesitated to place his hay where this was placed.

3. All risks were assumed by plaintiff, the risk of carelessness alone excepted.

*Lancaster & Baker,* for plaintiff:

1st. The defendants are liable as common carriers, because the original contract was not completed until the hay was shipped at Portland, or the plaintiff had had a reasonable time to ship it, and a day or two was fixed upon by the parties as reasonable.

2d. They are liable as common carriers under the arrangement in Portland for all risks not comprehended in that arrangement, as that would be in law a hiring of the railroad upon the breastwork and upon the wharf for that particular purpose, for a valuable consideration, the consideration of the freight money for conveying the hay over defendants' road, which included this particular use of the road.

3d. Under the arrangement in Portland the defendants would be liable for a loss resulting from any defect in the wharf or railroad, or from the want of proper care, even if they were not held as common carriers, because it would then stand as a special agreement upon a valuable consideration that plaintiff should have the use of the railroad to aid in shipping the hay, and would imply a promise that the railroad should be safe and sufficient for that purpose. 2 Greenl. Ev. § § 218, 222, and cases cited.

4th. Defendants would also be liable either as wharfingers or warehouse-men, for the same reasons and upon the same grounds named under the last head.

5th. A point not made in the agreement, but we think abundantly supported by the proof, is that defendants would be liable in this case even as gratuitous bailees, for such bailees are liable for gross negligence. Story on Bailments, c. 3, § 213, and to the end of the chapter.

Rice, J.—The evidence in the case, shows that the original contract of the defendants, as common carriers, was fully executed, to the satisfaction of the plaintiff. Howe, the forwarding agent of the railroad company, in his deposition, states, that "I told Mr. Knowles that the hay was now delivered in good order; that that was an end of our contract, and that it must now be at his risk against any damage. He replied that he acknowledged he received it in good order." The defendants therefore, clearly, are not liable as common carriers.

The case provides, that if in the opinion of the Court, the plaintiff is entitled to recover in any form of declaring, the defendants are to be defaulted.

It is contended that they are liable as *bailees*, or *depositaries*. The hay was permitted to remain upon the defendants' cars, for the accommodation of the plaintiff, and at his special request. For this the defendant received no additional compensation, nor consideration. At most, therefore, they were naked bailees, or gratuitous depositaries.

The defendants contend that there was no responsibility upon them; that the whole risk of loss or damage to the hay was assumed by the plaintiff. Mr. Hamlin, who acted as agent for the plaintiff, testified that "Mr. Howe consented that the hay might remain on the cars, (until it could be shipped,) with the understanding that the whole risk should be on Mr. Knowles. Mr. Knowles asked at the time, "is there any risk?" or something like that. I told Mr. Knowles, Howe being present at the time, that there was a risk; that there was a risk in all cases. He asked what risk? I told him there was the risk of fire and water, or rain; and there were other risks which could not then be thought of; there were a thousand risks. After a little more conversation it finally ended in Mr. Knowles assuming the whole risk; * * * that it should remain on the cars and at his risk until it was shipped."

This witness further testified that the cars on which the hay then was, were on the principal track, from which they

must be removed to make room for other trains. The track down on the wharf, and the one where the cars then stood, were the only tracks from which freight could be shipped.

This was on the 16th of July, 1851. On the 18th of the same July, the cars on which the plaintiff's hay was transported, having been removed, but under whose direction does not appear, to the defendants' wharf, were precipitated into the dock, by the breaking down of the wharf, in consequence of its being overloaded with railroad iron. This risk, the plaintiff affirms, was not contemplated by the parties, nor assumed by him, but was the consequence of the gross negligence of the defendants, and therefore they should sustain the loss.

Being a bailee without reward, the defendants are bound to slight diligence only, and are not therefore answerable except for gross neglect. Story on Bailments, § 62; *Foster* v. *Essex Bank*, 17 Mass. 500.

The authorities do not concur in a uniform standard by which to determine what constitutes gross negligence in a gratuitous bailee, or depositary. Such a bailee, who receives goods to keep *gratis*, is under the least responsibility of any species of trustee. If he keeps the goods as he keeps his own, though he keeps his own negligently, he is not answerable for them. He is only answerable for fraud, or that gross neglect which is evidence of fraud. Just. Inst. Lib. 3, tit. 15, § 3; *Coggs* v. *Barnard*, 2 L'd Raymond, 909, 914; *Foster* v. *Essex Bank*, 17 Mass. 500; 2 Kent's Com. 561, 562.

Judge STORY, in his work on Bailments, § 64, says, "The depositary is bound to slight diligence only; and the measure of that diligence is that degree of diligence, which persons of less than common prudence, or indeed of any prudence at all, take of their own concerns. The measure, abstractly considered, has no reference to the particular character of an individual; but it looks to the general conduct and character of a whole class of persons; and so Sir William Jones has intimated on some occasions." He

cites Jones on Bailments, 82, 83; *Tompkins* v. *Saltmarsh*, 14 Serg. & Rawle, 275; *Doorman* v. *Jenkins*, 2 Adol. & Ellis, 256.

Both of the above rules, which, on a strict analysis, will not be found in any essential point dissimilar, are subject, under some circumstances, to modification. Thus when the bailor or depositor not only knows the general character and habits of the bailee or depositary, but the place where and the manner in which the goods deposited are to be kept by him, he must be presumed to assent, in advance, that his goods shall be thus treated; and if under such circumstances they are damaged or lost, it is by reason of his own fault or folly. He should not have entrusted them with such a depositary to be kept in such a manner and place.

Applying these principles to the case under consideration, and whatever view we may take of the extent of the plaintiff's liability by reason of his special contract, the result cannot be doubtful. That it was the expectation of both parties that the hay was to be shipped from the defendants' wharf, is very apparent. That wharf was open to the inspection of the world. The plaintiff had the same opportunity to observe its condition as the defendants. The iron by which it was ultimately carried down had been deposited upon it months before. No additional incumbrance appears to have been placed upon the wharf by the defendants after the arrival of the hay, before it finally broke down.

In view of all the facts in the case, and independent of the special contract testified to by Mr. Hamlin, we are of opinion that the defendants are not liable. Therefore according to agreement a nonsuit must be entered.

SHEPLEY, C. J., and TENNEY, APPLETON and CUTTING, J. J., concurred.