## TUCKER *v.* HENNIKER.

A traveller is bound to exercise only ordinary care and diligence in providing himself with a suitable horse, carriage and harness; and if a defect in either contribute to an accident upon a dangerous highway, he is not thereby precluded from recovering, if the defect were unknown to him, and he were in no fault for not knowing it.

He is bound to exercise ordinary care, skill and prudence in the management of his team; such care, skill and prudence as mankind in general,

Tucker *v.* Henniker.

and not such as persons of the same class or division of mankind as himself, are accustomed to exercise in the management of their teams.

The arguments of counsel must be confined to the law and evidence in the case under consideration; and it is error for the court to permit counsel, in the argument of a cause to the jury, to state and comment upon facts not in evidence, against the objection of the other party.

CASE, for damages resulting to the plaintiff from alleged defects in a public highway in Henniker.

On trial, it appeared that on the afternoon of July 28, 1858, Dr. Jonas Ball hired a horse and carriage at Hillsborough Bridge, to go to the village of Henniker, where he arrived about sunset, taking the plaintiff and his daughter with him. Dr. Ball stopped at the hotel in Henniker; while the plaintiff and his daughter started with the horse and carriage to go to the plaintiff's mother's, about half a mile distant; and on the way thither, the plaintiff driving the horse at the time, the accident occurred.

The defendants offered some evidence tending to show that the horse which the plaintiff was driving was an unsuitable animal, in the habit of stopping and backing, and that Dr. Ball on one occasion said she was a "homely, ugly horse," and contended that the injury to the plaintiff resulted in part at least from the vicious character of the horse she was driving. Dr. Ball, the owner of the horse at the time, and other witnesses, testified that, so far as they knew or believed, the horse was perfectly kind, gentle, and free from all vicious habits, and that a child eight years of age had been accustomed to drive it.

The court, among other things, instructed the jury, that a traveller upon a public highway was bound to exercise ordinary care and prudence in providing him or herself with a suitable horse, carriage and harness, but nothing more; and if a defect in the horse, carriage or harness contributed to the accident resulting in damage arising from a defect in a highway, the traveller was not

thereby precluded from recovering, if the defect were unknown to him or her, and he or she were in no fault for not knowing it; that in this case it was immaterial what knowledge Dr. Ball had of the defect in the horse, if one existed, unless that knowledge were communicated to the plaintiff, or she were in fault for not acquiring it; that if the plaintiff exercised ordinary care and prudence in providing herself with a horse, carriage and harness, and had no knowledge of any defect in the horse, if one existed, and were in no fault for not knowing it, she was entitled to recover, even although a defect in the horse might have contributed to the accident.

The defendants also contended that the unskillfulness or want of care of the plaintiff in the management of the horse contributed to the accident; and upon this point the court instructed the jury, that if the plaintiff were guilty of any fault in the management of the horse, any want of ordinary care, skill and prudence in driving or controlling the horse, which contributed to the accident, without which the accident would not have occurred, notwithstanding the defect in the highway, she could not recover; because she was bound to exercise ordinary care, skill and prudence in managing the horse, such care, skill and prudence as ordinary persons like herself were accustomed to exercise in managing their horses. To the instructions on both these points the defendants excepted.

In the course of his argument to the jury the defendants' counsel, without objection or interruption, referred, by way of caution to the jury, and for the purpose of illustrating his views, to the large sums often claimed and recovered of railroads and towns in similar cases to that then under consideration, and the often fictitious and exaggerated character of the injuries claimed to have been received in accidents of this character.

In his reply, the counsel for the plaintiff referred to a case by name which had been tried before referees, and

stated the amount of damages awarded by the arbitrators for an injury resulting from a defect in a highway. The counsel for the defendants objected to this course of remark, as the facts alluded to were not in evidence, and had no proper bearing in the case. Thereupon the court suggested that the arguments of counsel should properly be confined to the law and evidence in the case under consideration; but the plaintiff's counsel insisting that he had a right to illustrate his own views, and the position of the defendant's counsel in appealing to the experience and observation of the jury in similar cases, by referring to another case of like character, the court permitted him to proceed with his argument.

The jury having returned a verdict for the plaintiff, the defendants moved that the same be set aside for supposed errors in the instructions of the court, and the course of the plaintiff's argument.

*Minot & Mugridge,* for the defendants, to the point that, if any defect in the plaintiff's horse contributed to the accident, she could not recover, referred to *Johnson* v. *Haverhill,* 35 N. H. 82; *Morrill* v. *Deering,* 3 N. H. 53, and *May* v. *Princeton,* 11 Met. 442; that the plaintiff was bound to exercise such ordinary care, skill and prudence as mankind in general were accustomed to exercise, in the management of her team, and not such as women in general were accustomed to use, they cited *Hubbard* v. *Concord,* 35 N. H. 62; that the course of the plaintiff's counsel, in stating and commenting on facts not in evidence before the jury, was erroneous, they referred to *Mitchum* v. *Georgia,* 11 Geo. 615.

*George, Foster & Sanborn,* for the plaintiff, on the first point, referred to *Palmer* v. *Andover,* 2 Cush. 600; *Hunt* v. *Pownal,* 9 Vt. 44; *Verrill* v. *Minot,* 31 Me. 299, and *Clark*

v. *Barrington*, 41 N. H. 44. Upon the second point they cited *Hubbard* v. *Concord*, 35 N. H. 52.

FOWLER, J. The instructions upon the first point were in the precise language of the decision of this court in the recent case of *Clark* v. *Barrington*, 41 N. H. 44, where the question was fully considered, and are fully sustained· by the highest courts of Maine, Vermont and Massachusetts. See authorities cited by the plaintiff's counsel ; also, *Hayden* v. *Attleborough*, 7 Gray 338, and *Norris* v. *Litch-field*, 35 N. H. 271.

The defect in the horse, if one existed without the knowledge of the plaintiff, and she were in no fault for not knowing it, must be regarded as an accident which could not be prevented by ordinary care and prudence on her part, and not as any fault of hers contributing to the injury sustained by her.

The instructions upon the second point, although generally correct, contain a single expression in the explanation of what constitutes ordinary care and skill, which, in the opinion of the court, might have misled the jury as to the proper standard by which to determine it. The plaintiff was bound only to the exercise of ordinary care, skill and prudence in the management of her horse ; such care, skill and prudence as persons or people in general were accustomed to exercise in managing their horses. Common or ordinary diligence is defined by Story as " that degree of diligence which men in general exert in respect to their own concerns ;" "which men of common prudence generally exercise about their own affairs in the age and country in which they live." Story on Bailments, sec. 11. In a country where women are accustomed, as among us, to drive horses and carriages, there can be no doubt that the degree of care, skill and prudence required of a woman in managing her horse would be precisely that degree of care, skill and prudence which persons of

common prudence, or mankind in general, usually exercise, or are accustomed to exert, in the management of the horses driven by them. Now the language of the charge in the court below might be construed as making the average care, skill and prudence of women in managing horses, instead of the average care, skill and prudence of mankind generally, including all those accustomed to manage horses, whether men or women, boys or girls, the standard by which to determine whether or not the plaintiff had been guilty of any unskillfulness or want of care in the management of her horse at the time of the accident. As it may be doubtful whether this average would be higher or lower than that of mankind in general, and as it is not the precise standard prescribed by the law, and the jury may possibly have been misled by it, the instructions must be held to have been erroneous on this point. Jones on Bailments 6; *Farnum* v. *Concord,* 2 N. H. 392; *Hubbard* v. *Concord,* 35 N. H. 52; *Tompkins* v. *Saltmarsh,* 14 Serg. & Rawle 275; *Vaughan* v. *Menlove,* 3 Bing. N. C. 468; *Batson* v. *Doravan,* 4 B. & A. 21–30; *Doorman* v. *Jenkins,* 2 Ad. & El. 256.

We also think the court erred in permitting the counsel for the plaintiff to proceed with his argument upon facts not in evidence, and having no proper bearing upon the questions in issue, after their attention had been called to the matter, and their interposition sought, although the course of remark permitted might have seemed to be excused by the previous allusions of the defendants' counsel to considerations scarcely more pertinent and proper. No fault of the opposite counsel could justify a repetition of that fault by his opponent. The jury are sworn to render a true verdict in every case, according to law and the evidence given them, and the well established rule of judicial proceedings confines the arguments of counsel before them to comments upon and suggestions in relation to that law and evidence. It would seem

Tucker *v.* Henniker.

utterly vain, and quite useless, to caution jurors, in the progress of a trial, against listening to conversations out of the court room in regard to the merits of a cause, if they are to be permitted to listen in the jury box to statements of facts calculated to have a bearing upon their judgment, enforced and illustrated by all the eloquence and ability of learned, zealous and interested counsel.

It is irregular and illegal for counsel to comment upon facts not proved before the jury as true, and not legally competent and admissible as evidence. The counsel represents and is a substitute for his client; whatever, therefore, the client may do in the management of his cause, may be done by his counsel. The largest and most liberal freedom of speech is allowed, and the law protects him in it. The right of discussing the merits of the cause, both as to the law and facts, is unabridged. The range of discussion is wide. He may be heard in argument upon every question of law. In his addresses to the jury, it is his privilege to descant upon the facts proved or admitted in the pleadings ; to arraign the conduct of parties ; impugn, excuse, justify or condemn motives, so far as they are developed in evidence ; assail the credibility of witnesses, when it is impeached by direct evidence, or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance on the stand, or by circumstances. His illustrations may be as various as the resources of his genius ; his argumentation as full and profound as his learning can make it ; and he may, if he will, give play to his wit, or wings to his imagination.

To his freedom of speech, however, there are some limitations. His manner must be decorous. All courts have power to protect themselves from contempt, and indecency in words or sentiments is contempt. This is a matter of course in the courts of civilized communities, but not of form merely ; for no court can command from

an enlightened public that respect necessary to an efficient administration of the law, without maintaining, in its business proceedings, that courtesy, dignity and purity, which characterize the intercourse of gentlemen in private life.

So, too, what a counsel does or says in the argument of a cause must be pertinent to the matter on trial before the jury, and he takes the hazard of its not being so. Now, statements of facts not proved, and comments thereon, are outside of a cause ; they stand legally irrelevant to the matter in question, and are, therefore, not pertinent. If not pertinent, they are not within the privilege of counsel.

But, farther, every person against whom an accusation is made or a suit brought, is entitled to be tried by a jury, and according to the laws of the land. This was the greatest of all the privileges conferred by *magna charta,* and is guaranteed by our own fundamental law. This privilege is substantially violated, if counsel are permitted to state facts and comment upon them in argument against the adverse party, which are not before the jury by proofs regularly submitted. The party accused or prosecuted is not only entitled to have a trial by a jury of twelve men duly constituted, but to have his trial conducted according to the course and usage of the common law, and the established rules of judicial proceedings. An essential element in the trial by jury is, that the verdict shall be rendered according to the facts of the case, legally produced before the jurors. They are sworn to give their verdicts according to evidence, and if they find without evidence, or against evidence, or upon evidence incompetent, or not legally admissible for any cause, a new trial will be granted. They cannot even render a verdict upon knowledge within their own breasts ; but if a juror has knowledge of facts pertinent to the issue, he may be sworn. The law, with great care, prescribes the rules by

Tucker *v.* Henniker.

which facts are to be submitted to the jury. The testimony must be relevant; the best evidence the nature of the case admits must be produced; hearsay is excluded; it must not be d. wn out by leading questions; and, by our Constitution, in criminal trials, the witnesses must be confronted with the prisoner; the right of cross-examination exists in all cases. All these and numerous other regulations are prescribed to determine the admissibility and truth of the facts pertinent to the issue upon which a verdict is to be rendered.

When counsel are permitted to state facts in argument, and to comment upon them, the usage of courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury is denied. It may be said, in answer to these views, that the statements of counsel are not evidence; that the court is bound so to instruct the jury, and that they are sworn to render their verdict only according to evidence. All this is true; yet the necessary effect is to bring the statements of counsel to bear upon the verdict with more or less force, according to circumstances; and if they in the slightest degree influence the finding, the law is violated, and the purity and impartiality of the trial tarnished and weakened. If not evidence, then manifestly the jury have nothing to do with them, and the advocate has no right to make them. It is unreasonable to believe the jury will entirely disregard them. They may struggle to disregard them; they may think they have done so, and still be led involuntarily to shape their verdict under their influence. That influence will be greater or less, according to the character of the counsel, his skill and adroitness in argument, and the force and naturalness with which he is able to connect the facts he states with the evidence and circumstances of the case. To an extent not definable, yet to a dangerous extent, they unavoidably operate as evidence which must more or less influence the

minds of the jury, not given under oath, without cross-examination, and irrespective of all those precautionary rules by which competency and pertinency are tested. *Mitchum* v. *State*, 11 Geo. 633, 634 ; *Berry* v. *State*, 10 Geo. 522 ; *Hodgson* v. *Scarlet*, 1 Holt N. P. C. 621 ; 3 E. C. L. 203, 243 ; *Brooke* v. *Sir Henry Montague*, Cro. Jac. 90 ; 1 Hawk. P. C., sec. 8 ; *Cutler* v. *Dixon*, 4 Coke 14 *b*, note A ; *Waterer* v. *Freeman*, Hobart 266 ; *Weston* v. *Dobriet*, Cro. Jac. 432 ; *Astley* v. *Cooper*, 2 Burr. 807 ; *Hodgson* v. *Scarlet*, 1 B. & A. 232 ; 3 Black. Com. 29 ; 1 Saund. 130.

With these views, the verdict rendered for the plaintiff must be set aside, and

*A new trial be granted.*