By deed dated March 5th, 1917, William M. Imbrie and Janet T. Imbrie, his wife, conveyed to themselves and others. as trustees, certain lands, with the building thereon erected now known as "Englewood Memorial House," situate on the northwest corner of Englewood avenue and Armory street, in the city of Englewood. The conveyance was a gift by the grantor, William M. Imbrie, to the trustees and their successors, upon the express terms and conditions, which in said conveyance were stated to be covenants running with the land, that the same should be held and used exclusively for Protestant religious and social work among and for the benefit of Italians, but if the number of persons of that race desiring to use the building should become small, the trustees were authorized to admit others to its use. It was stated in said conveyance that the trustees should have no power to sell or mortgage the property, or to consolidate or unite with any organization other than the Young Men's Christian Association, but if at any time it should appear to the trustees that a sale or other disposition of the property is necessary, they should have power to make application to the chancellor, in accordance with the provisions of the New Jersey law relating to the sale or disposition of lands granted to religious, educational or charitable corporations, and, in the event of sale being directed, to apply the proceeds of sale in accordance with the order of the chancellor. The donors reserved the right to change the terms and conditions of the gift in any manner.
The building cost to erect and furnish about $40,000. The intention of the donors was to Americanize the Italian residents of Englewood and vicinity through religious and *Page 192 
social work conducted at the "Memorial House," but a few years after it was established an Italian church was erected in the neighborhood and the Italian people discontinued their attendance at the "Memorial House," whereupon the trustees devoted it to a meeting place and club room for all boys and girls for social and recreation purposes.
By a supplemental deed or declaration of the terms of the trust, dated April 2d 1921, made by William M. Imbrie and wife to the trustees and duly recorded, the donors declared that the said premises should "be used exclusively to serve the needs of the community, so as to develop better lives through the encouragement of wholesome activities of any kind that shall be deemed by the trustees to further such purposes;" that no person or organization, other than the trustees, should control the use and occupation of the premises; that the trustees should have no power to sell or mortgage the premises, unless because of a material change in the character of the neighborhood, the object and purposes of the gift became no longer capable of fulfillment, in which event the trustees were authorized to make application to the chancellor, in accordance with the provisions of the New Jersey law relating to the sale or disposition of lands granted to religious, educational or charitable corporations, and, in the event of a sale being directed, the proceeds should be applied to carrying on similar work elsewhere in accordance with the order of the chancellor.
The expense of maintaining the building and carrying on the work therein was borne by the donors for several years, and when they became no longer able to continue their financial support, the work was taken over temporarily by Englewood residents interested in philanthropic, charitable and social welfare work, and in May, 1922, some of these men and women incorporated the "Social Service Federation of Englewood," under the laws of this state, Mr. Imbrie and three other trustees of the "Memorial House" being among the incorporators, and this corporation has been and is conducting settlement and social welfare work at the "Memorial House," and it is the desire of the donors and the trustees *Page 193 
that such work be continued by the federation, to which the federation consents, provided the property can be conveyed to it free of the covenants, conditions and restrictions imposed by the deed of trust and supplemental deed.
The general object for which the federation was organized, as stated in its certificate of incorporation, is "to serve the needs of the community (of Englewood) so as to develop better lives through the encouragement of activities of any kind that shall be deemed by the trustees to further such purposes," and the specific object of its organization is to conduct philanthropic, charitable, settlement and social welfare work among the residents of Englewood in need of such service.
The complainants in this cause are William M. Imbrie, his wife and all the other trustees named under his gift, except Emma M. Steen, a trustee named in the original deed, who has since resigned. She is made a defendant to the suit with the attorney-general of the state, and the specific prayer of the bill is that the complainants may be authorized to convey the property in question to the social service federation of Englewood, free from the covenants, conditions and restrictions contained in the deed and supplemental deed above mentioned, to the end that the property, when so conveyed, may be held, used, conveyed, mortgaged or otherwise disposed of by the grantee, free from any covenants, conditions or restrictions. The defendant Emma M. Steen has filed her consent to the entry of a decree in accordance with the prayer of the bill, and the attorney-general, representing the undefined body of the public which may have acquired an interest in the property under the terms of the conveyance from Mr. and Mrs. Imbrie, has filed an answer alleging that the rights of the public in the trust should be preserved, and stating that he sees no objection to a conveyance of the property by the trustees to the federation, for the purpose of carrying out the trust imposed on the trustees, in case it shall be found that the federation is able to administer the trust. *Page 194 
The doctrine of cy pres is recognized and applied by this court. The principle of the doctrine is that when a gift has been made for charitable purposes, which, by lapse of time or otherwise, can no longer be literally or exactly executed, the gift will be administered under the direction of the court of chancery, as near as may be, according to the donor's intention. The plan or scheme for the future administration of the gift must be submitted to and approved by this court. Mackenzie v.Trustees, 67 N.J. Eq. 652, 672; St. James Church v. Wilson,82 N.J. Eq. 546; affirmed, 83 N.J. Eq. 324; Christian v. CatholicChurch, 91 N.J. Eq. 374. But the doctrine cannot be applied when the donor has directed what disposition shall be made of the trust property in the event of the failure of the use to which he directed it should be devoted. Larkin v. Wikoff, 75 N.J. Eq. 462;affirmed, 77 N.J. Eq. 589; First Congregational Society v.Bridgeport, 121 Atl. Rep. 77.
The proofs show that the trustees of the gift find no demand for the purposes for which the gift was originally established, namely, for the benefit of people of the Italian race, and that in carrying out the supplemental purposes of the gift and in maintaining the building they are hampered and circumscribed by lack of funds, and there is danger that the general purpose and object of the donors will be defeated by a compulsory abandonment of the property. The social service federation is able financially to maintain the property and carry on the work committed by the donors to the trustees, and the object for which the federation was incorporated, as quoted above, is almost identical in language with the object declared by the donors in their supplemental deed or declaration of the terms of trust, and the transfer of the property to the federation and the conduct of its social welfare work therein, so nearly along the same ideas as defined by the donors, would promote and perpetuate the general purposes of the donors and would continue to benefit the individuals whom the donors had in mind. It is a situation in which the cy pres doctrine should be applied, unless the donors have directed otherwise, and the trustees be decreed *Page 195 
to convey the property to the social service federation to administer, as near as may be, for the purposes for which the trust was created, but in making such decree this court could not direct the trustees to convey a better or larger estate than was conveyed to them. The property came to their hands upon certain terms and conditions, which were stated to be covenants running with the land, and to convert this limited estate into a fee free from all restrictions and conditions, by a decree of this court, would be quite contrary to the doctrine of cy pres.
If it were desired that the cy pres doctrine be applied, I am confronted with the terms of the original and supplemental deeds which state the donors' intention and direction to be that the trustees shall have no power to sell or mortgage, or to transfer the property to any other organization or association. The original deed provides that the trustees shall have no power to consolidate or unite with any organization other than the Young Men's Christian Association, and the supplemental deed provides that no person or organization, other than the trustees, shall control the use and occupation of the premises. This court should not, under the guise of cy pres, authorize or sanction an act of the trustees, which the donors have expressly prohibited.
When lands have been conveyed to any religious, educational or charitable association, or to trustees thereof, upon trusts that the same shall be held and used for specific uses and purposes, but without power to sell or otherwise dispose of the same, and it shall appear to the chancellor that a sale thereof will promote and benefit the trust, the chancellor is authorized to order that the lands be sold free from the limitations of the trust, and that the proceeds of sale be held upon the same or like conditions, limitations or trusts as were declared in the original trust, or be devoted to some use not inconsistent therewith. P.L. 1911 p. 76; Supp. Comp. Stat. p. 1308 § 1.
Under this statute the lands in question can be ordered sold free of the trust, whereupon the trust attaches to the proceeds of sale, but the complainants in this case do not desire a sale. *Page 196 
Under the same statute, whenever it shall appear to the chancellor that such a trust will be benefited by devoting the lands to some use or purpose, other than the specific use or trust upon which the same were conveyed, the chancellor is authorized to order the trustees to devote such lands to some use or purpose other than, and not inconsistent with, the uses and purposes of the trust upon which the same were granted to them. This is an attempt to state the cy pres doctrine in statutory language and does not help the complainants, because it does not contemplate that the lands, when devoted to another use, shall be entirely freed from the limitations and conditions of the trust, but that the lands shall remain in trust, subject to limitations, conditions and terms, as near as may be, to those of the original trust.
Finally, the deed and supplemental deed point out the course the trustees shall follow when they are no longer able to carry out the object and purposes of the gift. They are directed to apply to the chancellor "in accordance with the provisions of the New Jersey law relating to the sale or disposition of lands granted to religious, educational or charitable corporations." The statute (P.L. 1911 p. 76) was in force when the deed and supplemental deed were executed, and is undoubtedly the "New Jersey law" which the donors had in mind. As I have endeavored to show, the chancellor may, under this statute, order that the property be sold, or that it be devoted to a use not inconsistent with the uses and purposes of the existing trust. In the event that the chancellor shall order a sale, the original deed of trust provides that the trustees shall apply the proceeds in accordance with the chancellor's order, and the supplemental deed provides that the proceeds shall be applied in carrying on similar work elsewhere, in accordance with the order of the chancellor. Neither of the orders which the chancellor may make under the statute appears to be desired by the complainants.
In stating my conclusions, I have had in mind the rights acquired under the deed and supplemental deed, by that portion of the public which was intended by the donors to benefit by the trust, and also the duties of the trustees to *Page 197 
such beneficiaries. I feel that this court cannot completely terminate those rights by authorizing the trustees to convey the property to the social service federation of Englewood, free from the covenants, conditions and restrictions of the trust, to the end that the property may be held, used, conveyed, mortgaged or otherwise disposed of by the grantee, free from covenants, conditions and restrictions. The complainants, William M. Imbrie and Janet T. Imbrie, as individuals and not as trustees, being the donors of the trust, need no decree of this court to enable them to make conveyance or release of their reversionary or other individual right or interest in the property.
Failing to obtain the specific relief for which they pray, the complainants may wish to accept a decree that the trustees convey the property to the social service federation, to hold and administer, as near as may be, for the purpose for which the trust was created. Such a decree can be made under the general prayer contained in the bill, for such other relief as the case may require and as may be agreeable to equity, and it would be justified in this case under that portion of P.L. 1911 p. 76, which authorizes the chancellor to order the trustees to devote the property to some use or purpose other than and not inconsistent with the uses and purposes for which the property was granted to them. The donors, Mr. and Mrs. Imbrie, are complainants herein; they join with the trustees in the specific and general prayers for relief, and they will be bound by the court's decree. Mr. Imbrie was a witness at the hearing of this cause and testified that it is his wish that the trustees be permitted to convey the property to the federation to hold for the object for which it was incorporated, and it has been noted that he and Mrs. Imbrie were among the incorporators of the federation. Moreover, by their deed and supplemental deed, Mr. and Mrs. Imbrie authorized the trustees to make application to the chancellor under P.L. 1911 p. 76, in case they could no longer carry out the purpose and object of the trust, and thereby they impliedly consented to such order as the chancellor is empowered by that statute to make. I have pointed *Page 198 
out that the object for which the federation was incorporated is almost identical with the object of the trust as declared by the donors in their supplemental deed, and I believe that the general purpose of the donors will be accomplished, and the rights of the public will be protected and conserved, if a decree be made pursuant to the statute that the trustees convey the property to the federation in trust, to hold for the object specified in its certificate of incorporation. Such a decree would, in effect, be merely substituting an incorporated trustee for the individual trustees.