Complainant is the secretary of banking of the State of Pennsylvania and as such has taken over the Northwestern Trust Company, a Pennsylvania corporation, chartered as a title insurance and trust company, by reason of its insolvency.
In 1920-21, the trust company was in good financial standing, employing over fifty clerks, and the officers and directors decided to purchase and did buy two adjoining tracts of land situate in Ocean City, New Jersey, upon which there was erected a dwelling, which building was remodeled, enlarged and improved, also by the trust company, and which was used for the purpose of occupancy by the employes of the trust company for vacation purposes.
The admitted fact is that the trust company paid out of its funds the total purchase price of the property and that title was conveyed by two deeds, in each of which the grantees were named as Frank H. Griffith, Harry A. Rau and Edward N. Williams, trustees for the Northwestern Trust Mutual Benefit Association.
Complainant says that under the theory of a resulting trust, defendants should reconvey the Ocean City property, the purposes of the trust being at an end.
The first question is as to the law applicable to the facts.
Pomeroy, in dealing with resulting trusts, section 1031, page 2336, says:
"In all species of resulting trusts, intention is an essential element, although that intention is never expressed by any words of direct creation. There must be a transfer, and equity infers the intention that the transferee was not to receive and hold the legal title as the beneficial owner, but that a trust was to arise in favor of the party whom equity would regard as the beneficial owner under the circumstances."
He then reduces resulting trusts to two general types, section 1032, page 2337:
"1. Where there is a gift to A, but the intention appears, from the terms of the instrument, that the legal and beneficial estates are to be separated, and that he is either to enjoy no beneficial interest or only a part of it. In order that a case *Page 556 
of this kind may arise, there must be a true gift so far as the immediate transferee, A, is concerned; the instrument must not even state any consideration, and no valid complete trust must be declared in favor of A or of any other person. Such trusts, therefore, generally arise from wills, although they may arise from deeds. If the conveyance be by a deed, the trust will result to the grantor; if it be by a will the trust will result to the testator's residuary devisees or legatees, or to his heirs or personal representatives, according to the nature of the property and of the dispositions.
"2. The second type includes the cases where a purchase has been made, and the legal estate is conveyed or transferred to A, but the purchase price is paid by B."
Perry, in his work on Trusts, section 124, page 183, says, referring to resulting trusts:
"They are sometimes called presumptive trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions with each other, although the general foundation of this kind of trusts is the natural equity that arises when parties do certain things."
Further, in section 125, the same author says:
"Although equity will sometimes construct a trust when there is no such intention, and such constructive trust does not differ in substance from a resulting trust, it seems better for the sake of clearness to reserve the term `resulting trusts' for those which arise from presumed, or implied, intention, which in no case canbe contrary to the actual intention as proved by properevidence."
Vice-Chancellor Leaming, in Down v. Down, 80 N.J. Eq. 68,
has extensively quoted from the various text book writers, among others being 1 Lew. Trusts 143, as follows:
"Resulting trusts may be subdivided into the following classes: First, where the owner or person legally and equitably entitled makes a conveyance, devise or bequest of the legal estate, and there is no ground for the inference that he meant to dispose of the equitable; and, secondly, where a purchaser of property takes a conveyance of the legal estate *Page 557 
in the name of a third person, but there is nothing to indicatean intention of appropriating to himself the beneficialinterest."
In 26 R.C.L. § 57 p. 1214, the definition and nature of resulting trusts is dealt with as follows:
"When a person becomes invested with the title to real property under circumstances which, in equity, obligate him to hold the title and to exercise his ownership for the benefit of another, a trust arises in favor of such other person commensurate with his interest in the subject-matter. A resulting trust may be defined as one which arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears, or is inferred from the terms of the disposition or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. A trust of this sort does not arise from or depend on any agreement between the parties. Its very name implies that it is independent of any contract and is raised by the law itself on a particular state of facts. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another; a contract, however, may be looked to as affording evidence of the relation between the parties and the character of the transaction. A resulting trust is a mere creature of equity, and does not arise where there is an express declaration of trust by the parties in writing. Intention is an essential element, and though not expressed in words the law presumes the intent from the facts and circumstances accompanying the transaction and the payment of the consideration for the whole or a definite or aliquot part of the property sought to be impressed with the trust."
Notwithstanding the argument on the part of complainant that a constructive trust should be decreed in favor of complainant, such a result cannot obtain because there is no fraud, either actual or constructive, apparent from the evidence, and, as said by Professor Pomeroy in section 1044:
"An exhaustive analysis would show, I think, that all instances of constructive trusts properly so-called may be referred to what equity denominates fraud, either actual or constructive, as an essential element and as their final source."
Now, with the legal situation clearly before us, the question is, do the facts as disclosed by the evidence demonstrate that a resulting trust in favor of the complainant should be decreed?
It will be observed that in the first instance proof that the lands were purchased by moneys furnished entirely by the *Page 558 
trust company and title taken in the name of the beneficial association raises a presumption of a resulting trust.
"In the first instance, where no question arising out of the relationship of the parties is involved, and the trust sought to be established is in land paid for by one person with conveyance to another, it is necessary to show only that the cestui quetrust furnished the purchase money for the land in controversy, and that the deed was taken in the name of another, the trustee."26 R.C.L. § 77 p. 1231.
Notwithstanding this rule of law, as I view it, the complainant, on the whole evidence, must establish his contention that a resulting trust did arise in favor of the trust company, and that fact is to be determined from the evidence as to events preceding and subsequent to the purchase. Phillips v.Phillips, 81 N.J. Eq. 459; affirmed, 83 N.J. Eq. 345.
Intention is the controlling point upon which a decision on this case turns, and the question, therefore, is: What was the intention of the directors of the Northwestern Trust Company in the purchase of the Ocean City property?
The outstanding piece of evidence on this point is the authority given by the board of directors to the person who acted for them when the purchases were made. This gentleman was a Mr. Robinson, secretary and treasurer of the trust company, and the resolution reads as follows:
"At a meeting of the Board of Directors of the Northwestern Trust Co., held on Tuesday afternoon, June 1st, 1920, the following Directors being present Mess. Freihofer, Pendergest, O'Brien, Ward, Bertolet, Bilyeu, Lehmuth, Riday, Gillingham, Fisher, Cossart, Hamilton, Robinson, Schmidheiser. Minutes of last meeting read and approved. On motion of Northwestern Trust Co. purchase property Ocean City for the bank clerks vacations purchase price $14,000."
Under that authority, Mr. Robinson, for the trust company, paid the full consideration for the purchases and he had the conveyances made to the trustees, Frank H. Griffith, Harry A. Rau and Edward N. Williams.
The expressed intention of the resolution is the purchase of the Ocean City property for bank clerks' vacations, and this is verified by the testimony of two former directors of *Page 559 
the trust company, who say that such was, in fact, the intention of the board of directors, and that never was there even a thought of putting both the legal and equitable title in the beneficial association.
The defendants, in their answer, say that the board of directors did intend to convey full title to the association and that the consideration therefor was that it was in lieu of salary raises, as well as by way of bonus payments. There is absolutely no evidence to support any such contention.
Outside of the intent, as gathered from the resolution, what evidence have we?
As far back as 1915 there was admittedly a desire on the part of the board of directors of the trust company to promote the general welfare of the employes, as well as a desire on the part of the clerks to better their conditions, and Mr. Robinson, for the trust company, was co-operating, and the result was that there was effected a rather loose form of association, known as the "Bank Clerks' Association," and its aims and purposes were not definitely defined, but the general thought was to perfect an organization and eventually create a pension fund. This rather chaotic form of organization continued until about the time of the purchase of the first piece of land in Ocean City in 1920. That tract was conveyed in December of 1920 and in November of that year, I think largely at the suggestion of Mr. Robinson, a meeting of the bank clerks was called and the new name was adopted for their association, namely, the Northwestern Trust Mutual Benefit Association. Trustees were attempted to be selected at this meeting but it required a second meeting, about a month later, for the final selection of these trustees. At this latter meeting, the trustees named in the deeds were elected. Mr. Robinson was chosen as president, Mr. Higgins as secretary and treasurer. Both of these gentlemen were officers of the trust company and it is evident that the trust company intended to be in close touch with the officers of the association. No incorporation was ever effected and I think there were no subsequent meetings of the association of any importance. *Page 560 
Up to this point there seems to be nothing in the evidence that would justify a finding that there was any intention on the part of the trust company to part with its equitable title.
How was the property managed and controlled during the eleven years intervening between the purchase and insolvency of the trust company? The original dwelling was used up until 1928, a period of eight years, when remodeling and enlarging contracts were undertaken and paid for out of the funds of the trust company. Some $14,000 was expended and not a cent from any funds of the beneficial association, but all from the trust company's funds; in fact, the association, as such, never had any such funds.
It was admitted that the cost to the bank clerks for board and rooms was fixed at a price less than the cost (that cost being fixed by the trust company) and the difference was paid out of the funds of the trust company. The means adopted for these payments and all payments made by the trust company on account of the Ocean City property were to deposit the funds of the trust company in a separate account called "Bank Clerks' Account" and then check out from that fund by checks of the trust company, authorized and signed by the treasurer or assistant treasurer.
What was the character of membership in the association? Was it stable or otherwise? The very nature of the membership in the association, it seems to me, dispels the idea of any intent to vest the association with complete title. Membership arose by employment and terminated with cessation thereof. The membership did not function with reference to the management control or business policy of the Ocean City project, other than as the officers of the trust company would designate some one of the bank employes to perform some service, such as making arrangements for the visitation of those clerks who desired to accept the vacation advantages offered thereby. Why vest an association composed of such a membership with full title when the purpose of the purchase was met by reserving the equitable title in the donors? Why should the trust company give full and complete title and still pay taxes, insurance and carrying charges and allow *Page 561 
an association composed of members who paid no dues to have not only the legal but equitable ownership? There was no stability to membership and no advantage of full ownership to the bank clerks because when they left the employ of the bank their right to enjoy the benefit of the use of the property ceased.
From all of this, (a) payment by the trust company of the full purchase price of the property, (b) payment by it for improvement of the building, (c) payment of all carrying charges, insurance,c., (d) payment of deficiency in operation costs, (e) character of membership, (f) intention as expressed in the resolution of purchase; it seems to me that there is nothing in the case that would justify the thought that when the trust company purchased the property and caused the legal title to be put in the beneficial association that they intended to part also with the equitable title.
There are only two other fragments of evidence which are urged as showing such an intent. First, Rau, one of the trustees named in the deeds, says he always kept in his possession the original deeds, and he evidently wants the court to find that his possession was not as an employe of the trust company but as a trustee of the association. I do not deem the question of any great importance, but a reading of his evidence discloses such an absolute lack of frankness as to lead the court to the conclusion that he thought the possession of the deeds to be of great importance and therefore magnified any possession he may have had as an officer of the trust company into a personal possession. My finding is that whatever possession he may have had was for the trust company.
The second circumstance which is pointed out as tending to show that the trust company had intended the purchase as a complete gift was that the property was not carried on the books of the trust company as an asset and that it was not so reported to the banking department of Pennsylvania in the annual statements. It does appear, however, that the moneys expended, both for purchase, improvement and up-keep, was carried as an item of general expense, and it seems to me clear *Page 562 
that while the trust company should have reported the ownership of the property in question in its true status, i.e., legal title in the association and equitable title in the trust company, that the mere fact that it did not do so is not sufficient for me to hold that a resulting trust did not arise in the purchase of this property in favor of the trust company.
My conclusion is that the equitable title to the premises in question was never conveyed by the Northwestern Trust Company and that complainant is entitled to have a reconveyance of the legal title thereto.