FIDELITY UNION TRUST COMPANY, a corporation, and RUDOLF SIEVERT, as executors of and trustees under the last will and testament of Clemens A. Laise, deceased, complainants,

*v.*

ELIZABETH MARIE LAISE et al., defendants.

[Decided May 8th, 1940.]

*Messrs. Stuhr & Vogt (Mr. William S. Stuhr),* for the complainants.

*Messrs. McCarter, English & Egner (Mr. George W. C. McCarter),* for the defendant Elizabeth Marie Laise.

*Messrs. Lindabury, Depue & Faulks (Mr. Francis W. Thomas),* for the defendants trustees of University of Pennsylvania, Katherine Wenner, Walter Laise, Johanna Laise, Katherine Laise, Elizabeth Laise, and G. Walter Laise.

*Mr. Charles J. Weaver,* guardian *ad litem* of defendant Clemens J. Laise.

*Mr. Waller J. O'Toole,* for the defendant American Chemical Society.

EGAN, V. C.

A construction of the will of the decedent, Clemens A. Laise, and a determination of the questions arising in respect to the decedent's estate is sought by the complainants. The testator died August 28th, 1938. His will was admitted to probate by the Prerogative Court of this state. The amended complaint asks for instructions upon the following questions:

1. The status of Clemens J. Laise, whom testator refers to in his will as "my son."

2. Whether 936½ shares of the capital stock of the Haworth Securities Corporation evidenced by a certificate for such shares found among the testator's effects are a part of the estate or represented shares owned by the testator's widow.

3. Whether 100 shares of preferred stock, and 106 shares of common stock, of the Tungsten Contact Manufacturing Co., Inc., evidenced by certificates standing in the testator's name were part of the testator's estate or were held by him as trustee for Haworth Securities Corporation.

4. Whether the gift to the American Chemistry Society of New York of the house in Tenafly, New Jersey, for a home for aged scientists, and the gift of $4,000 per year for the maintenance thereof, is valid, and whether the gift over of such property to a christian denomination for a home for orphan children is valid. If such gifts are held invalid, what disposition is to be made of the principal fund which was to produce the $4,000 per year.

5. Whether gifts to the University of Pennsylvania of income from the residuary trust created under the will are valid.

6. Whether the testator died intestate as to any part of his property.

7. Whether one-half of the *corpus* of the *inter vivos* trust established by Clemens A. Laise became part of the residuary

estate under the exercise of the power of appointment contained in the will.

Paragraphs tenth, eleventh and thirteenth of the will are the ones to which the questions relate. They are as follows:

"*Tenth:* I direct my executors and trustees hereinafter named to pay to my wife, Elizabeth Marie Laise, as and from the time of my death, the sum of Five Hundred Dollars per year in semi-annual payments, for the maintenance of my house in Haworth, New Jersey, until my son, Clemens J. Laise shall attain the age of thirty years. When my said son attains the age of thirty years, then I direct that said property shall be conveyed to him and his heirs and assigns forever, free and clear of all liens and encumbrances; and I request my beloved wife to convey her interest in said property, whether dower or otherwise, to the trustees hereinafter named so that they may be able to convey to my said son a good and sufficient title, in fee simple, to said property.

"If my said son shall die before attaining the age of thirty years, then I direct that my said wife shall have the use of said house for and during the term of her natural life, together with the income aforesaid for the maintenance thereof. If my said son shall die before reaching the age of thirty years, then, after the death of my said wife I direct that my mother shall have the use of said property and the income for maintaining the same for and during the term of her natural life.

"If my said son shall die before attaining the age of thirty years, then, after his death, the death of my said wife and the death of my mother, I give, devise and bequeath said property, free and clear of all liens and encumbrances, to my brother, Walter Laise, and his heirs and assigns forever.

"*Eleventh:* I give, devise and bequeath unto my beloved wife, Elizabeth Marie Laise, for and during the term of her natural life, our home in Tenafly, New Jersey, together with lots No. 1 and No. 2 in Block Five (5) on map entitled 'Third Amended Map of Highwood Heights, made for Malcolm S. Mackey, Tenafly, Bergen County, New Jersey, located on the easterly side of Knickerbocker Road, at the corner of Oak Avenue; together with all furniture, furnishings, household effects and equipment therein.

"After the death of my beloved wife, I direct the trustees hereinafter named to convey said property to the American Chemistry Society of New York, together with all the furniture, furnishings, household effects and equipment therein, for the purpose of establishing a home for aged scientists. If said society shall accept said devise and shall establish such a home for aged scientists, then I direct that there shall be paid to the American Chemistry Society of New York, out of my residuary estate, the sum of Four Thousand Dollars per year for the maintenance of said house and grounds and the payment of insurance, taxes, if any, and other necessary charges for the upkeep and maintenance thereof.

290

"If the said American Chemistry Society of New York shall not deem the plan of maintaining a home for aged scientists a feasible one, or for any other reason shall refuse to accept said devise, then I authorize, empower and direct said trustees to turn over said property to a christian denomination to be selected by them, for the maintenance of a home for orphan children; and for the maintenance of such home when established, I direct that there shall be paid out of my estate the sum of Four Thousand Dollars per year.

"*Thirteenth:* All the rest, residue and remainder of my estate, both real, personal and mixed, of which I am now seized or possessed, and of which I may hereafter become seized or possessed, including all property over which I have the right of appointment, particularly that under a trust agreement dated January 7th, 1931, into which I entered with The Trust Company of New Jersey as Trustee, I give, devise and bequeath to my executors and trustees hereinafter named, as trustees, to have and to hold the same upon the following trust:

"a. To set aside a sum sufficient to produce an income of Five Hundred Dollars per year for the payment provided in paragraph 'Tenth' hereof.    .

"After my son reaches the age of thirty years, or having died before reaching that age, then, after the death of my wife and my mother, the sum so set aside shall be added to the balance of the principal of the trust.

"b. After the death of my wife to set aside a sum sufficient to produce an income of Four Thousand Dollars per year for the payment provided in paragraph 'Eleventh' hereof; and until that time said income shall be distributed as part of the trust hereinafter set up.

"c. To invest and reinvest the balance of the principal and to collect the interest, dividends, rents, issues and profits therefrom.

"d. To pay three-fifths of the entire net income from said trust, quarter-annually, to my beloved wife, Elizabeth Marie Laise, for and during the term of her natural life.

"To pay one-fifth of the entire net income from said trust, quarter-annually, to my mother, Katherine Wenner, for and during the term of her natural life; and

"To pay the remaining one-fifth of the entire net income, quarter-annually, to my brother, Walter Laise, for and during the term of his natural life.

"e. After the death of my said wife to pay two-fifths of the entire net income of said trust, quarter-annually, to my son, Clemens J. Laise, for and during the term of his natural life. The remaining one-fifth of the entire net income of the share which was payable to my said wife during her life is to be paid to the University of Pennsylvania, of Philadelphia, Pennsylvania, in the proportions and for the purposes set forth in subdivision 'f' hereof.

"After the death of my mother, the one-fifth of the entire net income of the estate which was payable to her during her life shall also be paid to the University of Pennsylvania, of Philadelphia, Pennsylvania, in the proportions and for the purposes set forth in subdivision 'f' hereof.

"After the death of my brother, Walter Laise, the one-fifth of the entire net income payable to him during his life shall be divided into four equal parts and one of said parts shall be paid to Johanna Laise, wife of my said brother; one thereof to Katherine Laise, his daughter; one thereof to Elizabeth Laise, his daughter, and the remaining part thereof to C. Walter Laise, his son, for and during their respective natural lives. As each of them shall die, the income payable to the one so dying shall be paid to the University of Pennsylvania in the proportions and for the purposes set forth in subdivision 'f' hereof.

"f. The income payable to the University of Pennsylvania on the death of the beneficiaries in this paragraph mentioned shall be applied by said University as follows:

"Fifty per cent. thereof to the said University for the John Harrison Laboratory of Chemistry and the University hospital, share and share alike;

"Twenty per cent. thereof for endowments to establish scholarships for the study of diseases such as asthma, hay fever, infantile paralysis, &c.

"Fifteen per cent. thereof for endowments to establish scholarships for scientific research problems in the field of chemistry, especially radio television; and

"The remaining fifteen per cent. thereof for endowments for scholarships for the study of music, art or painting.

"If the University of Pennsylvania shall decline to accept these endowments, then the trustees shall pay the same to such university as they shall deem advisable, and which shall accept and carry out the purposes thereof."

The above questions will be considered in their numerical order:

1. The amended bill alleges in paragraph 4 that the testator left him surviving an adopted son, Clemens J. Laise. The defendant Elizabeth Marie Laise, widow of the testator, in her answer denies that the said Clemens J. Laise was an adopted son of the testator. It appears that the testator and his said widow have had the custody of the said Clemens J. Laise from his early infancy. He is now of the approximate age of fifteen years. The testimony is to the effect that the said Clemens J. Laise was not, in the lifetime of the decedent, adopted by the testator or his widow. The complainants are so instructed.

2. Among the assets of the estate is a certificate for 936½ shares of the stock of Haworth Securities Corporation. The widow, Elizabeth Marie Laise, has a certificate for 937½ shares. The two certificates appear to represent the same

stock. The widow claims that she owns beneficially and absolutely 937½ shares, and that the certificate in the possession of the estate is wholly invalid and does not represent any stock whatsoever. The evidence indicates that she is the owner of the stock. The said certificate for 936½ shares in the name of Clemens A. Laise is void and shall be canceled of record. The complainants are so instructed.

3. The estate's assets disclose 100 shares of the preferred stock, and 100 shares of the common stock of Tungsten Manufacturing Co., Inc., in the name of the testator. The testimony shows that this stock was bought and paid for with the money of Haworth Securities Corporation. Since the filing of the amended bill, this stock has been, by the joint action of Haworth Securities Corporation and the complainants, sold for $5,500, payable in installments and escrowed with complainant trust company pending final payment. The defendant Elizabeth Marie Laise contends that notwithstanding the stock was in the name of the testator, when he took legal title thereto, a resulting trust was imposed in favor of the Haworth Securities Corporation, which paid the consideration for the stock. The testimony submitted at the hearing satisfies me of the truth of the contention of Elizabeth Marie Laise.

The *Restatement of Trusts* § *440,* reads as follows:

"Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in sections 441, 442 and 444."

See *Gordon* v. *Griffith, 113 N. J. Eq. 554; 168 Atl. Rep. 57.*

4. By paragraph eleventh the testator devised and bequeathed to his wife a life estate in their home in Tenafly, New Jersey, together with certain lots and the furnishings and household effects in said home. After the death of the wife, the testator directs that his trustees convey to the American Chemistry Society of New York his Tenafly home, &c., for the purpose of establishing a home for aged scientists; if the society accepts the gift, then he provides the sum of

$4,000 annually for its maintenance. He further directs that in the event the society does not accept the premises, then property, &c., is to be turned over to a christian denomination for a home for orphan children. At the hearing evidence was intoduced which showed that there was no such society known as the American Chemistry Society of New York. However, there was in existence up to December 31st, 1937, the American Chemical Society, a New York corporation, which was dissolved on the date last aforesaid. The American Chemical Society of New York was succeeded by the American Chemical Society, a corporation created by an act of the Congress of the United States; its present office is in Washington, D. C. (*Exhibit C-14*). The latter corporation has, in its answer, disclaimed the devise and bequest contained in paragraph eleventh.

The defendant, Elizabeth Marie Laise, takes the position that the devise and bequest of the remainder estate after the life estate of the widow, lapsed, because the alternative gift to a christian denomination to be selected by the trustees is upon an express condition precedent which has not been performed. She says that the "American Chemistry Society of New York" must "refuse" to accept the devise before the gift over will take effect; and that since no such society exists, there is no refusal of the gift, and, therefore, it lapses.

The complainants counter with the proposition that the condition precedent required by the testator has been performed. They argue that the will shows (1) a general charitable intent; and (2) that the words "refuse to accept" are used in the sense of "fail to accept." They insist that the disclaimer of the American Chemical Society of Washington, D. C., the United States corporation, in the circumstances, is valid, applies to the gift and is a fulfillment of the condition precedent.

There was offered and received in evidence a certified copy of an act of Congress entitled "An act to incorporate the American Chemical Society" (*Exhibit C-14*). The act, among other things, recites that: "Robert T. Baldwin, Edward Bartow, Erle M. Billings, E. K. Bolton, Willard H. Dow, Gustavus J. Esselen, Arthur J. Hill, Townes R. Leigh,

Thomas Midgely, Junior, Charles L. Parsons, R. E. Swain, E. R. Weidlein, Frank C. Whitmore, H. N. Willard, and R. E. Wilson, being persons who are now directors of the American Chemical Society, a corporation existing under the laws of the State of New York, their associates and successors duly chosen, and such other persons as now are or may hereafter be associated with them as officers or members of said American Chemical Society, are hereby incorporated and constituted and declared to be a body corporate by the name of American Chemical Society."

Sections 6 and 7 of said act read as follows:

"Sec. 6. That as soon as may be possible after the passage of this Act a meeting of the directors hereinbefore named shall be held at the city of Washington in the District of Columbia by notice served in person or by mail addressed to each director at his place of residence by the Secretary of the American Chemical Society, a New York corporation, and the said directors, or a majority thereof, being assembled, shall organize and proceed to adopt bylaws, to elect officers and appoint committees, and generally to organize the said corporation; and said directors herein named, on behalf of the corporation hereby incorporated, shall thereupon receive, take over, and enter into possession, custody, and management of all property, real or personal, of the corporation heretofore known as the American Chemical Society, incorporated as hereinbefore set out under the laws of the State of New York on November 9th, 1877, and to all its rights, contracts, claims, and property of any kind or nature; and the several officers of such corporation, or any other person having charge of any of the securities, funds, real or personal, books or property thereof, shall, on demand, deliver the same to the said directors appointed by this Act or to the persons appointed by them to receive the same; and the directors of the existing corporation and the directors herein named shall and may take such other steps as shall be necessary to carry out the purposes of this Act.

"Sec. 7. That the rights of the creditors of the said existing New York corporation known as the American Chemical Society shall not in any manner be impaired by the passage of this Act, or the transfer of the property hereinbefore mentioned, nor shall any liability or obligation for the payment of any sums due or to become due, or any claim or demand, in any manner or for any cause existing against the said New York corporation, be released or impaired; but such corporation hereby incorporated is declared to succeed to the obligations and liabilities and to be held liable to pay and discharge all of the debts, liabilities, and contracts of the said New York corporation so existing to the same effect as if such new corporation had itself incurred the obligation or liability to pay such debt or damages,

"and no such action or proceeding before any court or tribunal shall be deemed to have abated or been discontinued by reason of the passage of this Act."

The testimony is to the effect that there had been no organization in the State of New York known by the name of "American Chemistry Society" of New York; there was also testimony that there formerly was a corporation known as the "American Chemical Society" of New York, and that it was dissolved December 31st, 1937 (*Exhibits C-13* and *C-14*).

It is clear that the testator at the time of the execution of his will intended that "if the said American Chemistry Society of New York" did "not deem the plan of maintaining a home for aged scientists a feasible one" then his trustees were authorized "to turn over said property to a christian denomination to be selected by them for the maintenance of a home for orphan children; and for the maintenance of such home when established" he directed that there be paid out of his estate "the sum of $4,000 per year."

In *Den* v. *Hance, 11 N. J. Law 244,* the court, among other things, said (at *p. 250*) :

"It was further argued on the part of the defendant's counsel that the right of choice to make or refuse the conveyance, was intended to be personally exercised by John; to be a personal consideration with him; in other words, that the disposition to be made of the farms was to depend on his preference and selection; and that as he died in the lifetime of the testatrix and before he could be called to make the choice, the subsequent devise which was to depend on his refusal, is now impossible, and cannot take effect, and the Mannington farm must therefore descend to the heirs-at-law. This argument assumes for its basis, a confidence in John, or an intention in his favor, much beyond the language of the will. The testatrix designed to produce a certain disposition of the real estate, which she has mentioned; the Mannington farm to John, the Elsinborough farm to Israel. Such only was her real aim. This disposition could not indeed be brought about, unless John thought proper to make the conveyance. She could not deprive him of his right to refuse. But she meant to confer upon him no power or authority, to

add nothing in this respect. The condition was framed and annexed to the devise, not for the benefit or gratification of John, but simply to produce the disposition which she desired.

"This argument also assumes an undue influence to the phrase 'in case the said John Smith shall refuse.' The term refuse, as here used, as explained by the context, is no more than a repetition of the condition, and is not designed to restrain or enlarge, or in anywise alter it, and means only a failure to convey and release." (Citing *Taylor* v. *Mason, 22 U. S. 325, 344.*)

In *Taylor* v. *Mason, 22 U. S. (9 Wheat.) 325,* the court construed a will devising land on condition that the devisee change his name and take an oath prescribed in the will. If he should refuse to comply with the terms, then the testator devised the property to the next male heir on the same terms. The court in discussing the terms said:

"Although the words 'refusing to comply' may, in general, have the same operation in law as the words 'failing to comply,' would have, yet, in this case, they are accompanied and explained by other words, which show that the word 'refusing' was used in a sense which might leave the estate in the devisee, though his name should not be changed. Where the condition to be performed depends on the will of the devisee, his failure to perform it is equivalent to a refusal."

I am satisfied that it was the intention of the testator to provide for a gift over for charitable purposes if the designated beneficiary should not take. The courts consistently . hold that where the intention is clear, any inept language will not be allowed to defeat such intent. *White's Estate, 34 Atl. Rep. 321 (Pa. 1896).* See *In re Young Women's Christian Association of New York City, 96 N. J. Eq. 568; 126 Atl. Rep. 610; Imbrie* v. *Steen, 96 N. J. Eq. 190; 124 Atl. Rep. 155; Larkin* v. *Wikoff, 75 N. J. Eq. 462; 72 Atl. Rep. 98; affirmed, 77 N. J. Eq. 589; 78 Atl. Rep. 1134.*

The aim of the courts is to sustain the provisions of the will and to avoid intestacy where possible. That thought is expressed in *14 Corp. Jur. 516,* as follows:

"The courts are more ready to apply the doctrine of *cy pres* where a particular trust fails at a time after its creation than where the

particular purpose fails at the outset * * *; but where the testator makes a bequest to some particular object of charity, as to a particular charitable institution, and the bequest fails because the object designated ceases to exist during the testator's lifetime, it has been held in some jurisdictions that the fund never vests in charity at all, but the legacy lapses, and the doctrine of *cy pres* has no application. However, it has also been said that the doctrine of *cy pres* may be applied even though the particular purpose of the settlor fails at the outset, and where the donee is not in existence at the time the gift takes effect, or has not the capacity to take, the charity will, nevertheless, be enforced according to the main charitable intention of the donor. Thus, a legacy to a particular association which was not in existence at the time of the testator's death has been held not to lapse, but merely to require the appointment of a trustee."

In *1 Amer. & Eng. Ann. Cases 542,* the principle is thus stated :

"If, however, the donor manifests a general charitable purpose, that purpose will be given effect *cy pres* although the particular charity designated is impossible. When a gift is made to a general charitable institution or object which never existed, or which cannot be found, the courts are inclined to infer a general charitable intent." (Citing *In re Mann (1903) 1 Ch. 232; Wallis* v. *Solicitor-General (1903), A. C. 173; In re Davis (1902), 1 Ch. 876,* and other English cases.)

The court said in *Danker* v. *Cooper, 114 N. J. Eq. 283; 168 Atl. Rep. 640:*

"In the construction of doubtful clauses in a will, that interpretation is to be adopted if possible which avoids a partial intestacy, unless it clearly appears that the testator intended to die intestate as to part of his property. The presumption against an intestacy is particularly strong where the subject of the gift is the residuary estate."

This construction of the gift is maintained in such cases as *Gulick* v. *Gulick Ex'rs, 27 N. J. Eq. 498; Traphagen* v. *Levy, 45 N. J. Eq. 484; 18 Atl. Rep. 222; Jennings* v. *Reed, 75 N. J. Eq. 530; 72 Atl. Rep. 939; McGill* v. *Trust Company of New Jersey, 94 N. J. Eq. 657; 121 Atl. Rep. 760.*

Of course, it is the settled law in this state that the court will not write a testator's will for him; but it is equally well settled that a testator is always presumed to have intended

to dispose of his entire estate and if such an intent can be found in the expressed provisions of the will, the court will, if possible, construe the will to pass the entire estate. *Bruce* v. *Bruce, 90 N. J. Eq. 573; 107 Atl. Rep. 434; Bankers Trust Company of New York* v. *Greims, 115 N. J. Eq. 102; 169 Atl. Rep. 655; affirmed, 117 N. J. Eq. 397; 176 Atl. Rep. 112.*

Our courts have repeatedly held that the meaning and intention of a testator must be determined, not by fixing the attention on single words in the will, but by considering the entire will and the surroundings of the testator when he executed the will and, by ascribing to him, so far as the testator's language permits, the common impulses of our nature. *Torrey* v. *Torrey, 70 N. J. Law 672; 59 Atl. Rep. 450; Holbrook* v. *Greene, 125 N. J. Eq. 337; 5 Atl. Rep. (2d) 730.*

A situation somewhat similar to the instant case existed in *Wood* v. *Hartigan, 195 Atl. Rep. 507 (R. I., 1937).* In that case the testatrix named charitable corporations as legatees. Those announced had dissolved and distributed their assets to successors whose charitable objects were similar to the designated corporations. The court decided that the gift was a charitable gift for charitable purposes, and not an absolute gift. It held that the non-existence of the designated "trustees" did not cause the gift to lapse. It, in part, said:

"The appointment by the Superior Court of such a trustee for each of the charitable bequests involved in this case should present little difficulty in the special circumstances of this case."

In *In re Briggs Estate, 139 Wis. 524; 208 N. W. Rep. 247,* the will provided: "I give and bequeath to the Young Women's Christian Association of Wisconsin the sum of $5,000."

No such organization existed but the intent of the testator was clear and the court held that it would appoint a trustee to apply the gift for the charitable purposes. The court said:

"It is for a specified purpose. The testator intended that it be administered for that purpose. The purpose is the controlling feature. The appointment of a trustee is a mere incident to accomplish that purpose; and even though the

trustee be in fact non-existent, a court of equity will not for that reason permit the bequest to lapse. It is the spirit that governs and this spirit is manifested by the testator's intention."

As an example of the application of the doctrine that the general testamentary intent for charitable purposes will invoke the doctrine of *cy pres,* see *Noice* v. *Schnell, 101 N. J. Eq. 252; 137 Atl. Rep. 582; certiorari* denied, *276 U. S. 625.*

I am satisfied that when the testator used the title "Chemistry" instead of "Chemical" in the corporation name that it was a misnomer. I believe that the testator had in mind the organization "American Chemical Society," the New York corporation. See *Caldwell National Bank* v. *Rickard, 103 N. J. Eq. 516; 143 Atl. Rep. 745.* In that case the "Richmond Memorial Hospital" located at Princess Bay, Staten Island, New York, was held entitled to a bequest made to the "Memorial Home at Princess Bay, Staten Island," no other institution answering that description being in existence and the testator having in his lifetime referred to the Richmond Memorial Hospital as the Memorial Home.

The quoted sections of *Exhibit C-14* of the congressional act to incorporate the American Chemical Society indicates that the American Chemical Society succeeded to the title of American Chemical Society of New York, and was thereby vested with the "possession, custody and management of all property, real or personal, of the corporation heretofore known as the American Chemical Society, incorporated * * * under the laws of the State of New York on November 9th, 1877," the beneficiary designated in the testator's will. As hereinabove mentioned, the American Chemical Society named in the act of the Congress of the United States has disclaimed the testator's bequest in its answer and I believe that the disclaimer properly complies with the condition in the will and the gift over takes effect, and the trustees are instructed "to turn over said property to a christian denomination to be selected by them, for the maintenance of a home for orphan children, &c.," after the death of the widow, Elizabeth Marie Laise, as provided in the eleventh paragraph of the will.

5. The residuary estate of the testator is considered in the thirteenth clause of the will. The estate is devised in trust to make certain payments to individuals for life. No question is raised against any of those life estates; therefore, they will be established as directed.

The same clause mentions the provision of $500 a year for the maintenance of the Haworth house as under the tenth clause of the will. The Haworth property was owned by the testator and his wife as tenants by the entirety. The testator requests his wife to convey this property to his trustees, in which event he directs his executors and ·trustees to pay his widow $500 for the maintenance of the Haworth house until "his son" Clemens J. Laise shall attain the age of thirty years, whereupon the property shall be conveyed to him in fee. There are provisions over in the event the son does not attain the age of thirty. The widow in her answer expresses her willingness to convey the property to the trustees on demand, and consequently, claims that she is entitled to the said $500 annually in accordance with the provisions of the will. When, and if, the widow conveys the premises as aforesaid, she will then become entitled to said sum and to the use and occupation of said premises until said Clemens J. Laise shall attain the age of thirty years; or, in the event of his death before arriving at that age, then the widow acquires a life estate in the premises in accordance with the provisions of the tenth paragraph of the will.

After the death of the widow, to whom three-fifths of the income is given, two-fifths of the income is given to the son, Clemens J. Laise, for life; the remaining one-fifth to the University of Pennsylvania. The executors contend that there is an intestacy as to the two-fifths of the income after the death of both the widow and Clemens J. Laise. The widow makes that contention and says that she is solely entitled to the *corpus* producing two-fifths of the income after the life estate to Clemens J. Laise, since the testator left no lawful issue. In the circumstances, she is the testator's sole distributee under the statute of distributions for said two-fifths. That statute, *R. S. 3:5-3,* reads:

"If there be no children, nor any legal representative of them, the whole surplusage shall be allotted to the husband or widow, as the case may be, of the intestate."

*R. S. 3:3-4* is to the same effect with respect to realty. Of course, the fact that the testator referred to Clemens J. Laise as his son, although not legally adopted, does not bestow upon him any right to inherit as heir or next of kin. *Dorsett* v. *Vought, 89 N. J. Law 303; 98 Atl. Rep. 248.*

I find the gifts to the University of Pennsylvania of income from the residuary trust created under the will are valid.

6. The answer to this question is contained in the answer to question 5 hereinabove.

7. On or about January 7th, 1931, the testator made an agreement with the Trust Company of New Jersey, pursuant to the terms of which, cash and securities were delivered to said trust company in trust to pay the income thereof to named persons for life, and upon the death of the survivor thereof, to distribute the principal and accumulated income, one-half to the University of Pennsylvania, and one-half as the testator might, at some future time, appoint. The testator exercised the power of appointment by paragraph thirteenth of his will; that being so, the one-half of the principal appointed in the will passes to the complainants as trustees, and is not a part of the residuary estate of the testator.